```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JENNY RAMGOOLIE,

                                               **Plaintiff,**

                   -against-

**ANDY RAMGOOLIE, et al.,**

                                              **Defendants.**

-----------------------------------------------------------------X

**16-CV-3345 (VEC)(SN)**

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE VALERIE E. CAPRONI:**

      On May 5, 2016, pro se plaintiff Jenny Ramgoolie brought a case alleging breach of contract, quantum meruit, unjust enrichment, fraud, breach of fiduciary duties, and intentional infliction of emotional distress against four individuals—Andy Ramgoolie, Jeremy Ramgoolie, Kevin Ramgoolie, and Annie Ramgoolie—and two corporate entities located in the country of Trinidad and Tobago, AANDCO Health Care Ltd. ("AANDCO") and KDR Medical Care Ltd. ("KDR"). On July 1, 2016, Jenny Ramgoolie moved for a preliminary injunction and appointment of receiver. ECF No. 25. On July 14, 2016, corporate defendants AANDCO and KDR moved to dismiss the complaint under Federal Rule of Procedure 12(b)(2) for lack of personal jurisdiction. ECF No. 34. The Court recommends that plaintiff's motion for a preliminary injunction and appointment of a receiver be DENIED and that corporate defendants' motion to dismiss be GRANTED.

## BACKGROUND

Plaintiff Jenny Ramgoolie is domiciled in Texas and sues four individual family members and two corporate entities for breach of contract and other state law claims. Plaintiff, a registered nurse, proposed in 2010 to set up a kidney dialysis center in Trinidad and Tobago to her brother Andy Ramgoolie, who is domiciled in Manhattan. Compl. ¶ 1. Under this arrangement, Plaintiff was to obtain necessary permits, design the center and equipment, set up supply chains and develop internal operations, while Andy Ramgoolie would pay the initial startup costs. Id.

In 2013, when it came time to file documents to incorporate the dialysis center under the name AANDCO Health Care Ltd., Plaintiff alleges that she and Andy Ramgoolie decided to keep her name off the paperwork because her son was on trial for murder in Florida, and they did not want to "taint the company in the eyes of the Trinidad authorities." Id. ¶ 2. Plaintiff alleges that nevertheless, upon AANDCO's opening in July 2014, she worked as its Director of Clinical Operations and was entitled to a salary, 50% of AANDCO's shares and profits, and expenses that she incurred in supporting AANDCO. Id. ¶¶ 5, 9. Andy Ramgoolie did not pay her or file "corrective paperwork" listing her as a director and shareholder of AANDCO. Id. ¶¶ 9–10. Instead, Andy Ramgoolie had listed Jeremy Ramgoolie, their nephew, and Annie Ramgoolie, their mother, as shareholders. Id. ¶ 11. Plaintiff alleges that Andy Ramgoolie then terminated her access to the AANDCO bank account and informed staff that she was no longer working at AANDCO. Id. ¶ 12. After various communications between Plaintiff and Andy Ramgoolie in which he rejected her claims, Andy Ramgoolie distributed a memo to AANDCO employees informing them that Plaintiff no longer worked there, instructed them not to speak with her, and had security posted to prevent her admittance into the facility. Id. ¶ 78.

Plaintiff subsequently communicated with Kevin and Jeremy Ramgoolie to discuss the possibility of their transfer of shares, but was rebuffed. Id. ¶¶ 80–83.

In January 2016, Plaintiff discovered that Kevin Ramgoolie, another one of her brothers, had registered a new company—KDR Medical Care Ltd.—at the same address as AANDCO, whose directors were Kevin Ramgoolie and her nephew Jeremy Ramgoolie. Id. ¶¶ 14–15, 91–92. Plaintiff believes that AANDCO assets and shares may have been transferred to KDR, which she alleges has the same address, customers, directors, and equipment. Id. ¶¶ 95, 101.

## DISCUSSION

### I.  Subject Matter Jurisdiction

Diversity of citizenship exists in cases where "the matter in controversy exceeds the sum or value of $75,000" between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), or between "citizens of different states" in which citizens of a foreign state are additional parties. 28 U.S.C. § 1332(a)(3). "Diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002); Franceskin v. Credit Suisse, 214 F.3d 253, 257 (2d Cir. 2000) ("[F]ederal courts lack subject matter jurisdiction over state law claims among aliens."). For individuals, only the U.S. citizenship of a dual citizen determines the application of diversity jurisdiction. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991).

In this case, Plaintiff alleges that she is a "dual United States-Trinidad citizen" domiciled in Texas. Compl. ¶ 30. Andy Ramgoolie is a "dual United States-Trinidad citizen" domiciled in New York County. Id. Kevin Ramgoolie and Jeremy Ramgoolie are citizens and domiciliaries of Trinidad and Tobago. Id. Annie Ramgooolie is a "dual United States-Trinidad citizen" domiciled

3

in Nebraska. Id. AANDCO and KDR are companies doing business in and registered in Trinidad. Id.

The Court has subject-matter jurisdiction over this case. Plaintiff has adequately pled that she seeks damages in excess of $75,000. Id. There is complete diversity over the matter under 28 U.S.C. § 1332(a)(3) because Plaintiff is a citizen of Texas, and the Defendants are citizens of New York, Nebraska, and Trinidad and Tobago, respectively. Finally, venue is proper in this district, because it appears from the pleadings that the Court has personal jurisdiction over Andy Ramgoolie, and "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3).

## II.   Personal Jurisdiction over AANDCO and KDR

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. American Buddha, 609 F.3d 30, 35 (2d Cir. 2010) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). When no discovery has taken place, however, a plaintiff need only make a prima facie showing of jurisdiction—through "legally sufficient allegations"—to survive a Rule 12(b)(2) motion. In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 452 (S.D.N.Y. 2005). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)).

On a motion to dismiss, the court must construe "all pleadings and affidavits in the light most favorable to the plaintiff" and resolve "all doubts in the plaintiff's favor." American Buddha, 609 F.3d at 34 (citations omitted). To resolve the issue of personal jurisdiction, the

court must first determine whether defendants are subject to jurisdiction under the long-arm statutes of New York, the forum state. Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014) (per curiam). If plaintiff has shown that defendants are amenable to process under New York's laws, it must assess "whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

In this case, Plaintiff alleges the following contacts between the corporate defendants and New York. First, she alleges that Andy Ramgoolie acted as an agent for AANDCO/KDR in purchasing significant amount of supplies in New York, specifically dialyzers, blood lines, bicarbonate and acid. ECF No. 42, Pl.'s Opp. Mem. at 6. Such supplies were allegedly received by Andy Ramgoolie at one of four New York addresses, loaded onto a container in Queens, New York, and subsequently shipped to Trinidad. Id. The Plaintiff alleges that Andy Ramgoolie, domiciled in New York, "micromanages all usage of the supplies at the dialysis center" and is in charge of managerial decisions at AANDCO. Id. She further alleges that AANDCO/KDR's "nerve center" or principal place of business is New York, not Trinidad and Tobago because "all decision making and policy formulation" is done there and Andy Ramgoolie controlled AANDCO from New York "via Skype and cameras." Id. at 10. Finally, she claims that much of the allegedly tortious activity at issue in this case, such as the idea to create AANDCO and the dispute over non-payment, occurred at least in part in New York, Andy Ramgoolie's state of domicile. Id. at 18.

### A. General Jurisdiction

"General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity," regardless of whether the claims in question concern activity conducted in the forum

state. Gucci Am., Inc. v. Li, 768 F.3d 122, 134 (2d Cir. 2014). New York Civil Practice Law and Rules ("CPLR") § 301 has historically permitted courts to exercise general jurisdiction over foreign defendants "doing business" in the state. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Hoffritz for Cutlery, Inc. v. Amajac, Ltd, 763 F.2d 55, 58 (2d Cir. 1985) (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267 (1917)). In order to establish that this standard is met, a plaintiff must show that a defendant engaged in "continuous, permanent, and substantial activity in New York." Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

In 2014, the Supreme Court handed down a landmark decision that narrowed the scope of general jurisdiction over foreign corporations. Daimler AG v. Bauman, 134 S. Ct. 746 (2014). The Court held that general jurisdiction over a corporate entity is not proper "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." Id. at 761. Instead, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," and for a corporation, "the paradigm forum for the exercise of general jurisdiction . . . [is] one in which the corporation is fairly regarded as at home." Id. at 760 (quoting Goodyear Dunlop Tires Ops., S.A. v. Brown, 131 S. Ct. 2846, 2853–54 (2011)). This was limited in virtually all cases to the corporation's place of incorporation and principal place of business. Id.[1]

---

[1] The Daimler Court did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19.

While the exact contours of New York's standard for general jurisdiction in a post-Daimler world have not yet been fully established, the Court of Appeals for the Second Circuit has stated that prior interpretations are likely too broad. See Li, 768 F.3d at 134–35 ("[T]he Court expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum."); Sonera Holding, 750 F.3d at 224 n.2 ("[W]e note some tension between Daimler's 'at home' requirement and New York's 'doing business' test for corporate 'presence' . . . . Not every company that regularly 'does business' in New York is 'at home' there.").

In this case, neither AANDCO nor KDR were incorporated in New York, and, even accepting all of Plaintiff's claims as true, did not have their "principal place of business" in New York merely because they purchased or shipped substantial amounts of medical equipment in the state or because Andy Ramgoolie exercised some degree of managerial authority over operations in Trinidad from the state. On the contrary, it is undisputed that they serve all of their customers and derive all of their income from Chaguanas, Trinidad and Tobago, not New York. The fact that the idea for the companies was allegedly conceived in New York and an individual alleged to be one of the key directors of the companies resides in New York does not subject the companies, wholly different entities, to suit under any and all causes of action in the state. Nor cannot be said that AANDCO (or its apparent successor, KDR) had "continuous, permanent, and substantial activity in New York" sufficient to meet the pre-Daimler "doing business" standard; under this logic, any company choosing to buy a significant amount of its supplies in a particular jurisdiction would be liable to suit under any cause of action in that jurisdiction. Accordingly, the Court does not have general personal jurisdiction over AANDCO and KDR.

B.     **Specific Jurisdiction**

A court has specific personal jurisdiction when an entity has "purposefully directed" its activities towards the forum state, the cause of action arises out of or relates to these contacts, and such jurisdiction is provided for in a state long-arm statute. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). New York's long-arm statute authorizes several types of specific jurisdiction over out-of-state defendants. CPLR § 302(a)(1) allows for jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state"; CPLR § 302(a)(2) does the same for non-domiciliaries who "commit a tortious act within the state"; CPLR § 302(a)(3) established jurisdiction for those who commit tortious acts outside the state "causing injury to persons or property within the state"; and CPLR § 302(a)(4) does so for those who own, use, or possess real property within the state.

i.     **CPLR § 302(a)(1) – Transacting Business Within the State**

New York courts define "'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" McKee Elec. Co. v. Rauland–Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "New York decisions thus, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful availment' . . . ." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 247 (2d Cir. 2007). If a plaintiff is able to establish that the defendant did "purposefully avail" itself of the privilege of conducting activities in New York, specific jurisdiction under this section is proper only "if there is an articulable nexus, or a substantial

relationship, between the claim asserted and the actions that occurred in New York." Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

Making all inferences in her favor, Plaintiff has made a prima facie showing that AANDCO—though not KDR—purposefully availed itself of New York's laws by repeatedly purchasing, storing, and shipping dialysis supplies within the state. Plaintiff has failed, however, to demonstrate a substantial relationship or articulable nexus between AANDCO's business dealings in New York and her claim that she is a rightful shareholder or partial owner of AANDCO in Trinidad. None of the operative facts necessary to evaluate her claim stems from or are in any way related to the medical supply-related business transactions allegedly carried out on AANDCO's behalf by Andy Ramgoolie in New York. Accordingly, the fact that AANDCO "transacted business" in New York within the meaning of CPLR § 302(a)(1) does not provide a basis for the Court to exercise jurisdiction over Plaintiff's wholly unrelated claims regarding her entitlement to salary, profits, and ownership interest in AANDCO and KDR.

### ii.   CPLR § 302(a)(2) and (3) – Tortious Acts

As a preliminary manner, CPLR § 302(a)(3) only permits personal jurisdiction over out-of-state defendants committing tortious activity outside the state when, *inter alia*, these acts cause injury to a "person or property within the state." Here, Plaintiff is not a New York resident, and the acts that she alleges are tortious have not caused any injury to any other persons or property within the state of New York. Therefore, the Court is left to consider whether AANDCO and/or KDR committed tortious acts within New York state that would serve as a basis for the Court to exercise personal jurisdiction over the companies under CPLR § 302(a)(2).

CPLR § 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." Bensusan Restaurant

Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997). This notwithstanding, "New York courts have recognized that jurisdiction under § 302(a)(2) may extend to out-of-state individuals who did not themselves commit a tort while physically present in New York but who can be deemed responsible for such a tort based upon theories of agency . . . ." LaChapelle v. Torres, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014) (citing In re Satyam Computer Servs. Sec. Litig., 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013)). "Whether a defendant's representative is an 'agent' for purposes of § 302(a) hinges on whether the representative acted 'for the benefit of and with the knowledge and consent of the defendant and the defendant exercised some control over the agent in the matter.'" Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)).

In promoting this theory, Plaintiff emphasizes her dealings with defendant Andy Ramgoolie while he was located in New York and argues that as a director of AANDCO with regular involvement in the company's administration, he served as its agent, and therefore any torts he committed in this capacity could be ascribed to the company. Fairly read, Plaintiff's complaint does allege a number of tortious acts committed by Andy Ramgoolie involving plaintiff's interest in AANDCO. It does not, however, appear that these alleged acts were committed "for the benefit of" AANDCO; rather, such acts would have been committed for Andy Ramgoolie's own benefit in asserting ownership of AANDCO. Moreover, it is not alleged that AANDCO exercised any control over Andy Ramgoolie in committing his allegedly tortious acts so as to establish a principal-agent relationship. In the final instance, any tortious acts that might be ascribed to AANDCO (or KDR) itself, related to Plaintiff not receiving shares or salary or not being properly listed as a shareholder, are alleged to have occurred in Trinidad and

Tobago, not New York. Therefore, CPLR § 302(a)(2) cannot serve as a basis for personal jurisdiction over the corporate defendants in this case.

### C. Due Process

As the Court has concluded that neither general nor specific personal jurisdiction is available under New York's long-arm statute, a full discussion regarding whether the exercise of such jurisdiction would comport with constitutional due process norms is unnecessary. As stated above in the discussion of specific jurisdiction under CPLR § 302(a)(1), the "purposeful availment" standard necessary to satisfy New York's "transacting business" is essentially identical to the federal "minimum contacts" test used to evaluate the constitutionality of personal jurisdiction under long-arm statutes. Best Van Lines, 490 F.3d at 247–48.

Nevertheless, even if jurisdiction were proper under one of New York's statutory bases, the Court would also have to determine that the assertion of such jurisdiction comported with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Supreme Court has identified five factors to be considered in this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113–14 (1987).

In this case, the corporate defendants, who are alleged to operate a single dialysis center in Chaguanas, Trinidad, would face a significant burden by having to defend this case in federal court in New York, notwithstanding the residence of alleged director and shareholder Andy

11

Ramgoolie in the forum state. New York has little to no interest in adjudicating an ownership and/or employment dispute brought by a Texas domiciliary regarding a dialysis center operating solely in Trinidad and Tobago. Cf. id. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). The plaintiff does have an interest in obtaining relief, and as a U.S. domiciliary, it is likely more convenient for her to seek such relief in the United States; however, because she chose voluntarily to engage in a business venture involving defendants in the sovereign nation of Trinidad and Tobago, it should be no surprise that a dispute concerning this business would be handled in that nation's judiciary. Finally, the adjudication of this dispute would compel the court to consider the procedural and substantive policies of another nation. While "the procedural and substantive interests of other nations in a . . . court's assertion of jurisdiction over an alien defendant will differ from case to case . . . those interests . . . will be best served by . . . an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." Id. at 115. In this case, the minimal interests of New York in the present controversy do not outweigh the burdens on the two foreign corporations.

Accordingly, the assertion of personal jurisdiction over AANDCO and KDR, even if authorized by New York law, would violate our constitutional guarantee of due process.

### III. Motion for Preliminary Injunction

Plaintiff also moves for a preliminary injunction to be entered against all the defendants. In summary, Plaintiff seeks that defendants be enjoined from "selling, transferring, concealing, damaging, altering, encumbering, or otherwise disposing of any real or personal property . . . which are titled in the name of, controlled by, owned by or otherwise in the possession of . . . AANDCO Health Care Ltd. and KDR Medical Care Ltd." ECF No. 25-1 at ¶ 26. Plaintiff also

seeks that the injunction limit the individual Ramgoolie defendants from transferring their own assets except as needed for day-to-day expenses, mandate that they maintain all current and past business records relating to AANDCO and KDR, prevent defendants from engaging in any Trinidad-based dialysis business that would be in direct competition with AANDCO and KDR, and continue to pay rent on a business apartment in Trinidad until the resolution of this dispute. Id. at ¶¶ 29–34. Finally, plaintiff also seeks that defendants be "enjoined" to produce financial statements of AANDCO, KDR, and Andy Ramgoolie, and prevented from removing any "forms and process" created by her, which she considers to be "trade secrets." Id. at ¶¶ 36–38.

A preliminary injunction is an extraordinary remedy never awarded as of right. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must demonstrate: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction. Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (citing Salinger v. Colting, 607 F.3d 68, 79–80 (2d Cir. 2010)).

Plaintiff has not established a clear likelihood of success on the merits. The crux of plaintiff's claims is that she had a contractual or quasi-contractual relationship with Andy Ramgoolie entitling her to salary, ownership interests, and profits stemming from the operation of AANDCO and/or KDR. While plaintiff has produced a great number of emails suggestive of her belief that she was entitled to compensation and/or AANDCO shares, no single contract or unambiguous statement of her rights and responsibilities has been produced at this stage. Even

assuming that personal jurisdiction is proper against the remaining individual Ramgoolie defendants (with the exception of Andy Ramgoolie, none of whom is resident in New York), further litigation would involve, at the very least, the threshold question of whether plaintiff's claims are barred by the Statute of Frauds, whether any documentary proof of a written contract exists, the content of any such written or oral contract, and considerations of the mental state or scienter of various defendants. At this stage of the litigation, plaintiff has not yet established that a contract or other obligation to her exists, much less that it has been breached.

Even if plaintiff could demonstrate a likelihood of success on the merits, "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction . . . ." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citation omitted). Plaintiff argues that defendants, especially Andy Ramgoolie, are likely to transfer personal and business assets to avoid any eventual judgment, and may dissolve or otherwise hinder the development of the currently functioning dialysis center for the same reason. This reasoning is speculative at best; if and when plaintiff is able to secure a money judgment against any of the defendants for any salary or profits to which she is entitled, she will be able to avail herself to court remedies to collect on such judgment. Plaintiff is not, however, entitled to a preliminary injunction preemptively freezing or attaching defendants' assets merely because she believes that she will have difficulty accessing them in the future. A remedy at law—that is, monetary damages—would be sufficient to compensate plaintiff for any injury that she suffered at the hands of the Ramgoolie defendants.

Accordingly, because plaintiff has established neither a likelihood of success on the merits nor a likelihood of irreparable harm or injury in the absence of an injunction, the Court recommends that her motion for a preliminary injunction be DENIED.

### IV.     Appointment of a Receiver

Appointment of a receiver is a "drastic remedy usually imposed only where no lesser relief will be effective." Ferguson v. Tabah, 288 F.2d 665, 674 (2d Cir. 1961). In general, factors supporting appointment of a receiver include:

> [f]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012) (citation omitted).

The Court cannot possibly recommend the appointment of a receiver in light of its recommendation that personal jurisdiction does not exist over the AANDCO and KDR defendants, foreign corporations domiciled in Trinidad. Moreover, because plaintiff has not at this juncture established a likelihood of success on the merits of her claims, she has also not demonstrated any fraudulent conduct by any of the defendants. A receiver cannot be appointed on bare allegations of such conduct in a case where the plaintiff has not yet established that defendants had any obligation or liability to her. Accordingly, the Court recommends that the Plaintiff's request for a receiver to be appointed to oversee the operations of the companies be DENIED.

## CONCLUSION

The Court recommends that AANDCO Healthcare Ltd. and KDR Medical Care Ltd.'s motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) be GRANTED, and that Plaintiff's motion for a preliminary injunction and appointment of a receiver be DENIED.

_____
SARAH NETBURN
United States Magistrate Judge

DATED: New York, New York
December 20, 2016

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

cc:     Jenny Ramgoolie (*by Chambers*)
       900 Henderson Avenue, Apt. 2515
       Houston, TX 77058