UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JENNY RAMGOOLIE,

                                 Plaintiff,

               -against-

ANDY RAMGOOLIE, et al.,

                                 Defendants.
-----------------------------------------------------------------X

**16-CV-3345 (VEC)(SN)**

**REPORT AND
RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE VALERIE E. CAPRONI:

       On May 5, 2016, pro se plaintiff Jenny Ramgoolie brought a case alleging breach of contract, quantum meruit, unjust enrichment, fraud, breach of fiduciary duties, and intentional infliction of emotional distress against four individuals—Andy Ramgoolie, Jeremy Ramgoolie, Kevin Ramgoolie, and Annie Ramgoolie—and two corporate entities located in the country of Trinidad and Tobago—AANDCO Health Care Ltd. ("AANDCO") and KDR Medical Care Ltd. ("KDR"). On February 10, 2017, the Honorable Valerie E. Caproni denied Plaintiff's motion for a preliminary injunction and appointment of receiver and dismissed the corporate defendants under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Ramgoolie v. Ramgoolie, No. 16-CV-3345 (VEC)(SN), 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017). The four individual defendants now move to dismiss the complaint. The Court recommends that the motion to dismiss for lack of personal jurisdiction, brought pursuant to Rule 12(b)(2) and by Kevin Ramgoolie, Jeremy Ramgoolie, and Annie Ramgoolie be GRANTED, but that the motion to dismiss for failure to state a claim that could survive New York's Statute of Frauds, brought pursuant to Rule 12(b)(6) and by Andy Ramgoolie, be DENIED.

## BACKGROUND

Plaintiff Jenny Ramgoolie is domiciled in Texas and sues four individual defendants, all of whom are her family members, for breach of contract and other state law claims. In 2010, Plaintiff, a registered nurse, proposed to her brother Andy Ramgoolie, who is domiciled in Manhattan, that they set up a kidney dialysis center in Trinidad and Tobago. Compl. ¶ 1. Under this arrangement, Plaintiff was to obtain necessary permits, design the center and equipment, set up supply chains and develop internal operations, while Andy Ramgoolie would pay the initial startup costs. Id. Plaintiff alleges that Andy Ramgoolie accepted her offer in July 2010, and she "began to work immediately." Id. at ¶ 2.

In 2013, when it came time to file documents to incorporate the dialysis center under the name AANDCO Health Care Ltd., Plaintiff alleges that she and Andy Ramgoolie decided to keep her name off the paperwork because her son was on trial for murder in Florida, and they did not want to "taint the company in the eyes of the Trinidad authorities." Id. ¶ 2. Plaintiff alleges that nevertheless, upon AANDCO's opening in July 2014, she worked as its Director of Clinical Operations and was entitled to a salary, 50% of AANDCO's shares and profits, and expenses that she incurred in supporting AANDCO. Id. ¶¶ 5, 9. Andy Ramgoolie did not pay her or file "corrective paperwork" listing her as a director and shareholder of AANDCO. Id. ¶¶ 9–10. Instead, Andy Ramgoolie listed Kevin Ramgoolie and Jeremy Ramgoolie, their nephews, and Annie Ramgoolie, their mother, as shareholders. Id. ¶¶ 11, 44, 45, 76. Plaintiff alleges that Andy Ramgoolie then terminated her access to the AANDCO bank account and informed staff that she was no longer working at AANDCO. Id. ¶ 12. After various communications between Plaintiff and Andy Ramgoolie in which he rejected her claims, Andy Ramgoolie distributed a memo to

AANDCO employees informing them that Plaintiff no longer worked there, instructed them not to speak with her, and had security posted to prevent her entry into the facility. Id. ¶ 78.

Plaintiff subsequently communicated with Kevin and Jeremy Ramgoolie to discuss the possibility of their transfer of shares, but was rebuffed. Id. ¶¶ 80–83.

In January 2016, Plaintiff discovered that her nephew Kevin Ramgoolie had registered a new company—KDR Medical Care Ltd.—at the same address as AANDCO, whose directors were Kevin and Jeremy Ramgoolie. Id. ¶¶ 14–15, 91–92. Plaintiff believes that AANDCO assets and shares may have been transferred to KDR, which she alleges has the same address, customers, directors, and equipment. Id. ¶¶ 95, 101.

## DISCUSSION

### I.      Kevin, Jeremy, and Annie Ramgoolie's Rule 12(b)(2) Motion

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. American Buddha, 609 F.3d 30, 35 (2d Cir. 2010) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). When no discovery has taken place, however, a plaintiff need only make a prima facie showing of jurisdiction—through "legally sufficient allegations"—to survive a Rule 12(b)(2) motion. In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 452 (S.D.N.Y. 2005). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)).

On a motion to dismiss, the court must construe "all pleadings and affidavits in the light most favorable to the plaintiff" and resolve "all doubts in the plaintiff's favor." American

Buddha, 609 F.3d at 34 (citations omitted). To resolve the issue of personal jurisdiction, the court must first determine whether defendants are subject to jurisdiction under the long-arm statutes of New York, the forum state. Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014) (per curiam). If plaintiff has shown that defendants are amenable to process under New York's laws, it must assess "whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

It is uncontested that Kevin and Jeremy Ramgoolie are citizens and residents of Trinidad and Tobago, while Annie Ramgoolie is a dual U.S.-Trinidad citizen and resident of Nebraska. ECF No. 69 at 7. Plaintiff bases most of her allegations of personal jurisdiction based on Kevin, Jeremy, and Annie Ramgoolie's connections to AANDCO and KDR, and provides voluminous documentation of Kevin and Jeremy's involvement in the management of the two companies. See, e.g., ECF No. 69 at 48–68. The question, however, is not whether these defendants were acutely involved in the management and operation of AANDCO and KDR, or have received shares of these companies, because the Court has already held that there is no personal jurisdiction over these Trinidadian companies in New York. In doing so, the Court rejected Plaintiff's arguments that the fact that Andy Ramgoolie may have exerted some degree of managerial control from New York was sufficient to confer general personal jurisdiction over AANDCO or KDR. Report and Recommendation, ECF No. 55 at 7, adopted by Ramgoolie, 2017 WL 564680. Therefore, the mere fact that Kevin and Jeremy Ramgoolie are tied to AANDCO and KDR, and AANDCO and KDR are in turn tied to New York resident Andy Ramgoolie, does not support Plaintiff's allegations of personal jurisdiction.

Beyond Kevin and Jeremy's connections to the Trinidadian companies, the only allegations of a connection to the forum state that Plaintiff presents appears to be that (1) dialysis supplies were ordered to a New York residence in Kevin Ramgoolie's name (ECF No. 69 at 21); (2) Kevin has been a member of the Quixstar Amway division for years, has stayed at several residences in New York during his trips for conventions, and ordered many products for his Amway line to be delivered to New York (ECF No. 69 at 4); and (3) Annie Ramgoolie, Plaintiff's ailing mother, lived in New York until July 2015, when she moved to Nebraska (ECF No. 69 at 5).

For their part, Kevin and Jeremy Ramgoolie have submitted essentially identical declarations averring that they reside in Trinidad and Tobago, have no knowledge and have had no conversations about Plaintiff's claims, have never conducted any business or travelled to New York in connection with any dialysis center in Trinidad and Tobago, and conduct no other business in New York. ECF No. 63, 64. On Annie Ramgoolie's behalf, her caretaker Candy Grush has submitted a declaration stating that Annie resides in Omaha, Nebraska, has not travelled to New York since 2015, before the commencement of the lawsuit, has no knowledge of the dispute concerning the Trinidadian dialysis centers, and is bed-ridden with a terminal illness. ECF No. 65.

A.      **General Jurisdiction**

"General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity," regardless of whether the claims in question concern activity conducted in the forum state. Gucci Am., Inc. v. Li, 768 F.3d 122, 134 (2d Cir. 2014). New York Civil Practice Law and Rules ("CPLR") § 301 has historically permitted courts to exercise general jurisdiction over foreign defendants "doing business" in the state, when such business is conducted "not

occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (citations omitted). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." Reich v. Lopez, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014) (citation omitted).

In 2014, the Supreme Court narrowed the scope of general jurisdiction, emphasizing that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014). The Court reiterated that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." Id. (quoting Goodyear Dunlop Tires Ops., S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011)). Therefore, although general jurisdiction is theoretically available for nonresident defendants, in practice it is limited to defendants "domiciled in New York, served in New York, or [who] have otherwise consented to the court's jurisdiction. Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." Reich, 38 F. Supp. 3d at 455 (citing Meyer v. Bd. of Regents of Univ. of Oklahoma, No. 13-CV-3128 (CM), 2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014)).

Kevin, Jeremy, and Annie Ramgoolie were not domiciled in New York as of the date of the commencement of this lawsuit and were not served in New York. Plaintiff's allegations of Kevin and Jeremy's involvement in AANDCO and KDR, Kevin's occasional ordering of medical supplies to an address apparently belonging to Andy Ramgoolie and periodic business trips to New York, and Annie's former residence in New York are plainly insufficient to establish New York's general jurisdiction over them.

6

### B.        Specific Jurisdiction

A court has specific personal jurisdiction when an individual has "purposefully directed" his or her activities towards the forum state, the cause of action arises out of or relates to these contacts, and such jurisdiction is provided for in a state long-arm statute. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). New York's long-arm statute authorizes several types of specific jurisdiction over out-of-state defendants. CPLR § 302(a)(1) allows for jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state"; CPLR § 302(a)(2) does the same for non-domiciliaries who "commit a tortious act within the state"; CPLR § 302(a)(3) established jurisdiction for those who commit tortious acts outside the state "causing injury to persons or property within the state"; and CPLR § 302(a)(4) does so for those who own, use, or possess real property within the state. Because no fair reading of the Plaintiff's complaint suggests that any of these defendants committed a tortious act while in New York or caused injury to persons or property within New York (Plaintiff is a Texas resident), the only arguable basis for jurisdiction is CPLR § 302(a)(1).

New York courts define "'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" McKee Elec. Co. v. Rauland–Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "New York decisions thus, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful availment' . . . ." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 247 (2d Cir. 2007). If a plaintiff is able to establish that the defendant did "purposefully avail" itself of the privilege of conducting activities in New York, specific

jurisdiction under this section is proper only "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

Making all inferences in her favor, Plaintiff has made a prima facie showing that Kevin Ramgoolie—though not Jeremy or Annie—may have purposefully availed himself of New York's laws by purchasing, storing, and shipping dialysis supplies within the state and travelling to New York on business trips. Plaintiff has failed, however, to demonstrate a substantial relationship or articulable nexus between any of Kevin's alleged activities in New York and her claim that she is a rightful shareholder or partial owner of AANDCO/KDR in Trinidad. None of the operative facts necessary to evaluate her claim stems from or is in any way related to any business transactions carried out by Kevin Ramgoolie in New York: rather, her claim against all three defendants is essentially related to their alleged misappropriation of her ownership interests in the Trinidadian dialysis centers. There is, accordingly, no "articulable nexus" or "substantial relationship" between Kevin Ramgoolie's sporadic New York-based activities and Plaintiff's claims, and, therefore, specific jurisdiction under CPLR § 302(a)(1) is unavailable.

As the Court has concluded that neither general nor specific personal jurisdiction is available under New York's long-arm statute, it need not consider whether the exercise of such jurisdiction would comport with constitutional due process norms. The Court recommends that the motions to dismiss for lack of personal jurisdiction filed by Annie Ramgoolie, Kevin Ramgoolie, and Jeremy Ramgoolie be GRANTED.[1]

---

[1] In the alternative, Plaintiff appears to argue that these defendants are necessary parties under Federal Rule of Civil Procedure 19. Plaintiff misapprehends the function of Rule 19. Rule 19 does not provide any independent basis for the Court to exercise personal jurisdiction. Instead, "Rule 19 recognizes exceptional circumstances in which the plaintiff's choice of parties or forum must give way because of an absent party's interest in the outcome of the action or involvement in the underlying dispute." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 131 (2d Cir. 2013). Accordingly, Rule 19(b) provides that when a

## II.     Andy Ramgoolie's Rule 12(b)(6) Motion

As a New York resident, Andy Ramgoolie does not contest that the Court has personal jurisdiction over Plaintiff's claims against him. Rather, he argues, pursuant to Rule 12(b)(6), that because Plaintiff has failed to produce a written contract between them, her claim is barred by New York's Statute of Frauds, codified at N.Y. General Obligations Law ("GOL") § 5-701. In general, "[t]he affirmative defense of the Statute of Frauds is appropriately raised on a motion to dismiss." Mercator Corp. v. Windhorst, 159 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) (citing Reives v. Lumpkin, No. 08-CV-7797 (CM), 2012 WL 2045854, at *8 (S.D.N.Y. June 4, 2012) (internal quotation marks omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555.) If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

---

necessary party cannot be joined (for lack of personal jurisdiction, for example), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Therefore, a finding that Annie, Kevin, or Jeremy Ramgoolie was a necessary and indispensable party under Rule 19(b) would not permit the Court to add them as parties; rather, it would potentially lead to the dismissal of the claims against Andy Ramgoolie.

When faced with a pro se litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). See Haines v. Kerner, 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

The Statute of Frauds prevents the enforcement of any "agreement, promise or undertaking . . . unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith" when such agreement, promise, or undertaking falls within certain categories specified by statute. Specifically, Andy Ramgoolie invokes GOL § 5-701(a)(1), which refers to any agreement that "by its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime," and GOL § 5-701(a)(10), which refers to any agreement that "is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, [or] exchange of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest."

### A.    GOL § 5-701(a)(1)

In support of his contention that GOL § 5-701(a)(1) bars Plaintiff's claims, Andy

Ramgoolie principally argues that the contract was not in fact performed within one year.

Plaintiff alleges in her complaint that in July 2010, she proposed and Andy Ramgoolie entered

into an agreement regarding the dialysis center in question. Compl. ¶¶ 1–2, 34–35. Between July

2010 and December 2012, Plaintiff alleges to have researched the dialysis business and laid the

groundwork for AANDCO's opening, presenting Andy Ramgoolie with a business plan in May

2012. Compl. ¶¶ 37–38. In 2013, when it came time to incorporate AANDCO in Trinidad and

Tobago, the parties agreed to keep Plaintiff's name off the registration papers, and instead named

Kevin Ramgoolie as a director, due to unrelated legal problems involving the Plaintiff's son in

Florida. Compl. ¶¶ 3, 41–42. The necessary paperwork for AANDCO's incorporation was filed

in April 2013, and AANDCO in fact opened in July 2014.  Compl. ¶¶ 5, 43, 49. The dispute

between Plaintiff and the defendants arose in 2015, when Plaintiff began to claim what she

alleged was her rightful interest in the company and was rebuffed. Compl. ¶¶ 53–78.

Andy Ramgoolie's argument focusing on the timeline of the alleged contract's

performance misinterprets the functioning of GOL § 5-701(a)(1), which only requires that an

agreement be reduced to writing if "*by its terms* [it] is not to be performed within one year from

the making thereof . . . ." "The question is not what the probable, or *expected*, or actual

performance of the contract was; but whether the contract, according to the reasonable

interpretation of its terms, required that it should not be performed within the year." D & N

Boening v. Kirsch Beverages, 63 N.Y.2d 449, 454 (1984) (citing Warner v. Texas & P. Ry. Co.,

164 U.S. 418, 434 (1896)). Therefore, "courts have generally . . . limited [the application of GOL

§ 5-701(a)(1)] to those contracts only which by their very terms have absolutely no possibility in

fact and law of full performance within one year." Id. If a contract may theoretically be

performed within one year, "in whatever manner and however impractical," it is not subject to

the Statute of Frauds under this provision. Id. at 455.

      For example, the New York Court of Appeals has found GOL § 5-701(a)(1) inapplicable

to a contract for the construction of a chemical plant that in fact took nine years to complete. The

court reasoned that, even though it was highly "unlikely" that the efforts to obtain a construction

contract and complete the plant could take place in one year, the Statute of Frauds did not apply

because no party "alleged [that the] agreement contained any provision which directly or

indirectly regulated the time for performance." Freedman v. Chem. Const. Corp., 43 N.Y.2d 260,

265 (1977). Similarly, an indefinite contract that had a duration term of "as long as [defendant]

sold beer in the New York metropolitan area" was found not to fall under the Statute of Frauds

because defendant could unilaterally end the contract by discontinuing its beer sales in New

York in less than one year without breaching. N. Shore Bottling Co. v. C. Schmidt & Sons, 22

N.Y.2d 171, 175 (1968); see also Beautiful Jewellers Private Ltd. v. Tiffany & Co., No. 06-CV-

3085 (KMW), 2007 WL 867202, at *3 (S.D.N.Y. Mar. 21, 2007) (holding that Statute of Frauds

did not apply when defendant could have terminated the contract by discontinuing all sales to

India, even though such a decision was highly unlikely).

      On the other hand, an oral agreement that calls for performance of an indefinite duration

and could only be terminated within one year by breach is within the Statute of Frauds. Kirsch

Beverages, 63 N.Y.2d at 457. In that case, the New York Court of Appeals applied the Statute of

Frauds to an agreement with a duration term of "as long as [plaintiffs] satisfactorily distributed

the product, exerted their best efforts and acted in good faith" and no provision existed where

either party might rightfully terminate it within a year of its making. Id. Therefore, agreements

that cannot be fully performed within one year and are "terminable within one year only upon a breach by one of the parties" must be committed to writing under GOL § 5-701(a)(1). Id. at 456.

In measuring the "one year" referred to in the statute, the relevant consideration is whether the contract can be fully performed by *all* parties involved. See Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 368 (1998) ("[U]nder a plain reading of . . . § 5-701, the provision relates to the performance of the *contract* and not just of one party thereto."); Meyers v. Waverly Fabrics, 65 N.Y.2d 75, 79 (1985) ("Plaintiff's full performance of her obligations under the contract within a year is insufficient to take the oral contract out of the statute and we decline plaintiff's invitation to hold her unilateral performance sufficient to do so."); Tyler v. Windels, 186 A.D. 698, 700 (1st Dep't 1919) ("[U]nder the decisions in the State of New York nothing short of full performance by both parties will take the contract out of the operation of the statute.").

Finally, though neither party has briefed the issue, New York case law suggests that, generally, the Statute of Frauds is inapplicable to oral agreements to form a joint venture, unless the joint venture itself has a specified durational term that exceeds one year. See Foster v. Kovner, 44 A.D.3d 23, 26 (1st Dep't 2007) ("[T]he statute of frauds is generally inapplicable to an agreement to create a joint venture . . . because, absent any definite term of duration, an oral agreement to form a partnership or joint venture for an indefinite period creates a partnership or joint venture at will"); F.S. Intertrade Office Prod., Inc. v. Babina, 199 A.D.2d 95, 96 (1st Dep't 1993) (holding that parties' agreement was "closely akin to that of a 'joint venture', to which the Statute of Frauds is inapplicable"); Richman v. Federated Adjustment Co., 95 A.D.2d 850, 851 (2d Dep't 1983) (declining to apply Statute of Frauds to situation "where individuals pool[ed] their respective efforts to effect a result and share in the benefits"); but see Ebker v. Tan Jay Int'l, Ltd., 739 F.2d 812, 827 (2d Cir. 1984) (Friendly, J.) (noting that "despite some sweeping

pronouncements to the effect that the New York statute of frauds, [GOL] § 5–701(a)(1), does not apply to joint ventures . . . the statute must apply to joint ventures having a stated term of more than one year . . . . The statements that the New York statute of frauds does not apply to joint ventures doubtless arise from the fact that joint ventures are usually not for a stated term but for a stated purpose, and the implicit assumption that, however unlikely, this purpose could be achieved within one year.").

The elements for a joint venture in New York are that (1) two or more persons must enter into a specific agreement to carry on an enterprise; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 67–68 (2d Cir. 2003) (citation omitted). All these requirements appear to be met in this case: Plaintiff alleges in her complaint that she and Andy Ramgoolie entered into a specific agreement to carry on a dialysis business with the intent of being joint venturers; Andy Ramgoolie contributed financing and Plaintiff her skill, knowledge, and effort; each were to have some level of control over the center; and each were to share in both profits and losses by virtue of their one-half ownership interest in AANDCO.

Drawing all inferences in Plaintiff's favor as it must on a motion to dismiss, the Court finds that, however unlikely, the oral contract as alleged in July 2010 could have been performed for one year. At its most basic level, the agreement required Plaintiff to perform the logistical groundwork to start up a corporation, for Andy Ramgoolie to provide the financing, and for the parties jointly to file registration papers indicating that they were both "co-owners and equal one-half shareholders" of the dialysis center. Compl. ¶ 1. These actions could all have occurred

within one year. Cf. Silberstein v. Prod Fashions, Ltd., 137 A.D.2d 805, 806 (2d Dep't 1988)

("The agreement contemplates organizing a corporation and issuing and delivering stock to the

parties. Therefore, it could have been performed within one year.").

While Plaintiff also alleges that part of the agreement was that she would "run the

dialysis center as Director of Clinical Operations," (Compl. ¶ 1), many of her claims against

Andy Ramgoolie are based on the denial of her alleged ownership interest, which would have

been generated as soon as she was added to the company's registration paperwork. Furthermore,

even the allegation that one of the terms was Plaintiff's continued employment at AANDCO is

not fatal to her claims. It is conceivable that, in the absence of a definite durational term alleged,

the company could have been formed, Plaintiff appointed as Director of Clinical Operations, and

then dissolved (for example, due to the economic failure of the enterprise or the mutual

agreement of the parties), before one year had elapsed without any breach of the agreement.

Though this may have been exceedingly unlikely, a court is not to examine either the actual,

expected, or likely performance under a contract—rather, it is to analyze an alleged oral contract

"by its terms." See Freedman, 43 N.Y.2d at 265.

Accordingly, the absence of a durational term in the oral agreement alleged by Plaintiff

indicates that it is not subject to the Statute of Frauds under GOL § 5-701(a)(1).

### B.     GOL § 5-701(a)(10)

In the alternative, Andy Ramgoolie relies on GOL § 5-701(a)(10), which subjects to the

Statute of Frauds any "contract to pay compensation for services rendered in negotiating" a

variety of different transactions, including businesses, business opportunities, acquisitions of

voting stock in corporations, and partnership interests. This section is also inapposite as to the

type of contract alleged by Plaintiff. While Plaintiff certainly alleges that her contract involved

the formation of a corporation and/or partnership interest, her complaint does not allege that she

was to be compensated for services that can be characterized as "negotiation."

GOL § 5-701(a)(10) applies "to various kinds of intermediaries who perform limited

services in the consummation of certain kinds of commercial transactions." Freedman, 43

N.Y.2d at 266; see also Charles Hyman, Inc. v. Olsen Indus., Inc., 163 A.D.2d 232, 235–36 (1st

Dep't 1990) (finding that "provision applies to brokers and intermediaries who perform limited

services in the consummation of certain kinds of commercial transactions, and not to the

principals of the transaction"); Super v. Abdelazim, 108 A.D.2d 1040, 1041 (3d Dep't 1985)

(finding that statute did not apply when "plaintiff's role was more extensive than merely

negotiating a business opportunity"). While such an intermediary can also be a principal to the

transaction, see Snyder v. Bronfman, 13 N.Y.3d 504, 510 (2009) (applying statute to finder who

was also principal in the transaction), the key requirement is that the "intermediary's activity [be]

. . . that of providing 'know-how' or 'know-who', in bringing about between principals an

enterprise of some complexity or an acquisition of a significant interest in an enterprise."

Freedman, 47 N.Y.2d at 267.

In this case, Plaintiff alleges that she would "research local regulations," "file proper

paperwork for operating permits," "design the layout of the center and source the equipment,"

"set up the supply chains," and "develop the internal operations procedures and paperwork,"

while Andy Ramgoolie the start-up costs for the dialysis center. Compl. at ¶ 1. These activities

go far beyond the definition of "negotiating" in the statute, which includes "procuring an

introduction to a party to the transaction or assisting in the negotiation or consummation of the

transaction." GOL § 5-701(a)(10). In this case, instead of Plaintiff assisting Andy Ramgoolie (or

vice versa) in "finding" a new business opportunity, consummating a particular transaction, or

acquiring a voting interest in a corporation, the alleged contract is far more akin to a joint venture, where two parties pool their respective expertise and resources to create a new opportunity for profit. GOL § 5-701(a)(10) simply does not apply to such agreements. See, e.g., Foster, 44 A.D.3d at 27 ("[T]he statute of frauds is generally inapplicable to an agreement to create a joint venture . . . ."). Accordingly, Andy Ramgoolie cannot invoke GOL § 5-701(a)(10) to bar Plaintiff's claims of an oral contract.

## CONCLUSION

The Court recommends that the motion filed by Kevin Ramgoolie, Annie Ramgoolie, and Jeremy Ramgoolie to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) be GRANTED, and that the motion filed Andy Ramgoolie to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) be DENIED.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      May 31, 2017
            New York, New York

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such

17

objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

cc: Jenny Ramgoolie (*by Chambers*)
   900 Henderson Avenue, Apt. 2515
   Houston, TX 77058