UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JENNY RAMGOOLIE,                                   16-CV-3345 (VEC) (SN)

        Plaintiff,

    -against-

ANDY RAMGOOLIE,

        Defendant.

--------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF HER MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)(2)(A)**

HOWARD A. BENDER, ESQ.
Attorney for Plaintiff
800 Westchester Ave., Suite 641-N
Rye Brook, NY 10573
Ph: 914-921-1998
Fax: 914-368-9705
hbender@benderesq.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                    i

**PRELIMINARY STATEMENT**                                              1

**ARGUMENT**                                                                  2

   A. Defendant has refused to produce
     documents that Defendant's own
     evidence demonstrates are in Aandco's
     possession.                                                   2

   B. The evidence tends to show that
     Defendant violated this Court's order by
     never requesting documents from
     Aandco's banks.                                             4

   C. Defendant has not produced any Direct
     Med documents.                                           7

   D. Defendant's claim that this motion is
     frivolous and brought in bad faith.                      7

   E. The appropriate sanction is the entry of a
     default judgment against Defendant.                   8

**CONCLUSION**                                                                 9

## <u>TABLE OF AUTHORITIES</u>

Cases

*Burke v. ITT Automotive, Inc.,* 139 F.R.D. 24 (W.D.N.Y. 1991).........................................................3

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.

    1979)........................................................................................................................................8

*Conway v. Dunbar*, 121 F.R.D. 211 (S.D.N.Y. 1988) .........................................................9

*Gross v. Trinidad & Tobago Tourist Bd.*, 1988 U.S. Dist. LEXIS 11831 (S.D.N.Y. 1988)...............9

*Gutman v. Klein,* 2008 U.S. Dist. LEXIS 92398, 2008 WL 4682208 (S.D.N.Y. October 15, 2008)..9

*Penthouse Int'l Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371 (2d Cir. 1981) .................................8

*Update Art, Inc v. Modline Pub'g, Ltd.*, 843 F.2d 67 (2d Cir. 1988) ...................................8

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) ...................................9

## PRELIMINARY STATEMENT

Defendant has produced only a mere fraction of the Aandco Health Care Limited ("Aandco") bank documents the Court ordered he produce pursuant to its January 29, 2019 order. Tracking the Court's order, Defendant: (1) failed to produce all the missing pages for accounts 801, 935, 401, and 927, including critical 2016 banking information for account 801, which includes a $1,004,500.00 (TT) wire transfer to Defendant's uncle, Munza Ramgoolie; (2) failed to confirm the existence of account 451, let alone produce documents from that account, despite the fact that Plaintiff can prove this account existed; (3) produced less than 20% of the checks issued by Aandco; and, (4) failed to produce any records from an alleged sixth account referenced in the parties' September 15, 2018 joint letter.  Importantly, Defendant provides no evidence that he even requested documents from either Republic Bank Limited or RBC Royal Bank (Trinidad & Tobago) Limited, as the Court ordered him to do. There's no reason why a full and complete set of Aandco's banking documents would not have been produced had Defendant actually made these requests. Instead, Defendant produces random canceled checks and a hodgepodge of documents containing handwritten notations that prove the documents were not newly obtained from either of Aandco's banks.

Defendant was also supposed to request and produce documents from R. Ramdass & Co. ("Ramdass"), Aandco's account. Ramdass was in possession of the "financial records" at issue and used them to audit and issue Aandco's 2016 financial statement on April 28, 2018. Defendant's own proof demonstrates that Ramdass then returned "any and all source documents" to Aandco. Defendant offers no excuse for this lack of production, but merely includes an email from a third party claiming "some" of the banking documents can't be produced because of an earthquake. Neither Defendant nor that third party attests to this previously undisclosed purported fact.

1

With respect to the "Banks," a term that remains undefined in both Defendant's and his counsel's declarations,  Defendant claims he requested the relevant documents, but provides no details whatsoever about those requests, including which documents the banks provided and/or the reasons given by the banks for why other documents were not provided. Defendant also offers no evidence to substantiate his claim that these requests were ever made. Finally, the bank statements produced by Defendant on February 13, 2019 are, with few exceptions, the same bank statements Defendant produced on November 26, 2018. Even the few newly produced bank statements contain markings and notations indicating that these documents were not newly obtained from Aandco's banks. Based on the evidence discussed below, Plaintiff contends Defendant intentionally disobeyed this Court's January 29, 2019 order by not just failing to produce bank documents, but by never requesting those documents in the first place.

Finally, Defendant failed to provide any Direct Med Company Ltd. ("Direct Med") documentation.

## ARGUMENT[1]

A.    Defendant has refused to produce documents that Defendant's own evidence demonstrates are in Aandco's possession.

Defendant claims that

> [i]n response to Plaintiff's further request for "financial records"
> AANDCO's accountant relied upon in his letter of October 6, 2016;
> [sic] I also requested of Mr. Ramdass for those documents [sic].
> Everything that was given was produced in Exhibit 3.[2]

(Declaration of Andy Ramgoolie, sworn to on March 29, 2019, ¶ 8) (the "A. Ramgoolie Decl.").

This statement indicates that Ramdass provided Defendant with at least some documents pursuant

---

[1] Procedural issues concerning this motion, specifically the parties' conferring on the issues discussed herein and the Court's authorizing a briefing schedule that should serve to supersede Local Rule 37.2 and the Court's Rule II(c), are discussed in the accompanying Reply Declaration of Howard A. Bender, sworn to on April 5, 2019, ¶¶ 7-8) (the "Bender Reply Decl.").

[2] Defendant does not indicate which documents in Exhibit 3 came from Ramdass.

to Defendant's recent request since Defendant claims that "[e]verything that was given was

produced in Exhibit 3." However, Ramdass, in his February 12, 2019 email states that

> we are not in possession of the bank statements, cheques and any
> other source documents of Aandco Health Care Ltd. used to audit the
> financial statement for the Company for the period 2014 to 2016.
> <u>Any and all source documents used by us were returned /left at the
> Company's place of business</u>.

(Declaration of Howard A. Bender, sworn to on February 27, 2019, Exh. D) (the "Bender Decl.")

(emphasis added). These two statements, both of which were just recently made, are inconsistent.

Defendant claims he was recently given documents by Ramdass. However, Ramdass indicates that

"[a]ny and all source documents" were "returned/left at the Company's business place." Which one

is it?

   Clearly, the "source documents/financial records" that were returned by Ramdass to either

Aandco or Defendant go far beyond the documents included in Exhibit 3 since it would have been

impossible for Ramdass to prepare the financial statements, including the 2016 financial statement

issued just last April, with only those documents. Defendant does not attest to a reason why these

documents weren't produced. Instead, he attaches an email from Kevin Ramgoolie claiming that

some of the "banking information" was lost, displaced, or damaged as a result of an earthquake.[3]

Defendant never referenced this earthquake in defending Plaintiff's motion to compel. Nor was a

document-destroying earthquake referenced in Defendant's responses to discovery requests or at any

time prior to now.

---

[3] Defendant has not submitted a sworn statement on behalf of Kevin Ramgoolie or anyone else attesting to the damage
and destruction of documents supposedly caused by an earthquake. *See Burke v. ITT Automotive, Inc.* 139 F.R.D. 24,
25-26 (W.D.N.Y. 1991) (claims concerning non-production of documents must be supported via affidavit).

3

B.      The evidence tends to show that Defendant violated this Court's order by never requesting documents from Aandco's banks.

Defendant was ordered by the Court to "search and produce Aandco's bank statements between 2014 and 2016" and to "request a copy of [all Aandco banking documents ordered to be produced] from the relevant banks." (ECF 181 at 4) (emphasis added). However, most of the documents produced on February 13, 2019 were previously produced on November 26, 2019 and the limited remaining documents contain markings indicating they were not newly acquired from either of Aandco's banks. (Bender Decl. ¶ 9).

As the sum total of evidence of his compliance with the Court's order as it relates to requesting copies of Aandco's bank statements and cancelled checks from the banks, Defendant states that "[he] requested the records from the Banks."[4] (A. Ramgoolie Decl. ¶ 4). That's it. Defendant offers no other details despite the fact that this motion seeks significant sanctions as a result of his failure to produce those documents.

In particular, Defendant does not indicate how the purported requests to the bank were made (orally, or, as one would expect, in writing), when he made these requests, to whom the requests were made, the responses to these requests, which (if any) documents were newly provided as a result of these requests, the reasons why other documents were not provided, or any other significant details. Nor does Defendant offer any written evidence to substantiate his claim that these requests were, in fact, made. Defendant offers no emails, faxes, contemporaneous notes, or phone records to verify this claim.

In fact, Defendant's past document production and his conduct and statements since then tend to prove that Defendant never even requested documents from the banks. As noted above, Defendant does not bother to advise which documents produced on February 13, 2019 came from

---

[4] The declarations of Defendant and Defendant's counsel fail to specifically mention Republic Bank Limited or RBC Royal Bank (Trinidad & Tobago) Limited, Aandco's banks, and neither of those declarations define the term "Banks."

either Ramdass or the banks. In his declaration, Defendant simply repeatedly states that "all records [he] searched for and received from [third parties] were forwarded to his attorney on February 12, 2019" and are now annexed to Exhibit 3 of his declaration. (A. Ramgoolie Decl. ¶ 6).  Interestingly, Defendant does not include the bank statements he produced on February 13, 2019 in Exhibit 3 to his declaration; a fact which, by itself, establishes the declaration's falsity. Plaintiff contends that Defendant omitted the bank statements from Exhibit 3 because, in making his February 13, 2019 production, Defendant tried to pass off these documents as being newly obtained from the banks when, in fact, they are, for the most part, the same documents Defendant produced on November 26, 2018.

Even those limited documents that are newly produced[5] contain markings, including handwritten dates, that indicate they did not come from the banks. Had Defendant actually obtained these documents from the banks as a result of requests made sometime after January 29, 2019 then the documents produced on February 13, 2019 would not contain these notes and markings. The February 13, 2019 production was a farce, which is why Defendant provides only the most bare ("I requested the records from the Banks.") and inconsistent[6] allegation concerning his supposed compliance with the order.

---

[5] Other than the limited amount of canceled checks, the only documents not previously produced on November 26, 2018 are five periodic statements for account 801 (Periodic Statements 17, 20, 21, 22, and 23) and a bank statement for account 927.

[6] Defendant states he made requests to the "Banks," but then subsequently states that he also "emailed with AANDCO people in Trinidad, [sic] to try and identify and/or locate the relevant banks. (A. Ramgoolie Decl. ¶ 4). Why would Defendant need help from "AANDCO people in Trinidad" to identify and locate the banks if he had already made requests to those banks? Assuming Defendant's declaration is merely chronologically inconsistent, a significant question remains as to why Defendant would need any help at all identifying and locating the banks when those banks are "identified and located" by the very bank statements Defendant produced in November 2018. This statement in and of itself evidences Defendant's lack of seriousness and concern with which Defendant viewed, and continues to view, the Court's January 29, 2019 order.

Furthermore, Kevin Ramgoolie's February 28, 2019 email provides (in a mysteriously changed font) that: "I [Kevin Ramgoolie] have requested the balance of missing cheques and other info, however the bank did not meet my request." (A. Ramgoolie Decl. Exh. 2). This would seem to contradict Defendant's contention that Defendant himself made requests to the banks.  It would also appear that if requests were actually made, which is a dubious proposition, then

Defendant also failed to produce any documents from account CD-940485752451. This account did exist as per Exhibit C to Plaintiff's Reply Declaration.  (Reply Declaration of Jenny Ramgoolie, sworn to on April 5 2019, ¶ 5, Exh. C) (the "J. Ramgoolie Reply Decl."). At best, it would appear Defendant delegated this task to Kevin Ramgoolie, who, for reasons unknown, was unable to confirm the account's existence, let alone obtain any documents. The more likely scenario is that no requests were ever made to the bank in this regard. Defendant also failed to provide any documents related to the May 25, 2016 transfer from Aandco's account "801" to Munza Ramgoolie, the parties' uncle, in the amount of $1,004,500.00 (TT). (ECF 181 at 3).

Defendant was the self-proclaimed sole founder, owner, and Chief Executive Officer of Aandco. As the Court rightly held, Defendant is in control of Aandco's documents, including Aandco's bank statements and canceled checks. (ECF 181 at 4). There is simply no justifiable reason why the banks would not have provided these documents to Defendant if he had actually requested them. Defendant certainly doesn't offer any reasons why this would have occurred. If the banks did produce some documents, why were they not able to produce everything? This simply doesn't make sense. Defendant's failure to abide by the Court's order is exactly the kind of willful and bad faith conduct deserving of the most stringent sanctions under Rule 37(b)(2)(A). (*See cases cited infra at 9-10*).

Defendant, who has had a month to prepare his answering papers[7], knew that his purported requests to the bank were a fact issue for purposes of this motion. (Plaintiff's Memorandum of Law in Support of Her Motion for Sanctions at 7). In laying bare his proof on this issue, Defendant offers nothing but a completely unsubstantiated statement claiming he made requests to certain undefined

Kevin, rather than Defendant, made them to only one bank since Kevin doesn't pluralize "bank." Finally, Kevin fails to advise Defendant why this particular bank was unable to meet his request. (*Id.*).

[7] Pursuant to the Court's March 6, 2019 order, Defendant had more than a month to file his answering papers and yet Defendant still filed his declaration a day late on March 30, 2019.

"Banks." (A. Ramgoolie Decl. ¶ 4). Defendant's response is an insult to the integrity of the federal rules concerning a party's discovery obligations, particularly when those obligations arise from an explicit court order.

C.      Defendant has not produced any Direct Med documents.

Defendant seeks to impress the Court with how generous he was in trying to obtain documents related to Direct Med.  (Kodsi Decl.¶ 2). In this regard, he claims he contacted Direct Med directly and corresponded with "Direct Med's attorney." Like Defendant's document production, this too is a farce. Had Defendant truly wanted to obtain Direct Med documents that were outside his "control," he could have simply requested them from his nephews and "Aandco people in Trinidad," Kevin and Jeremy Ramgoolie, who are Direct Med's directors.  (J. Ramgoolie Reply Decl.¶ 3, Exh. A). Furthermore, the "Direct Med attorney" with whom Defendant communicated just so happens to be his attorney in the Trinidad litigation. (*Id.* ¶ 4, Exh. B). Regardless of Defendant's self-laudatory attempts to obtain Direct Med documents, the fact remains that none of these documents have been produced.

D.      Defendant's claim that this motion is frivolous and brought in bad faith.

Rather than offer the Court details related to Defendant's purported requests to third parties or explanations as to why Defendant was unable to produce the documents subject to the Court's January 29, 2019 order, Defendant instead chooses to answer Plaintiff's motion by claiming the motion itself is frivolous and made in bad faith. (Kodsi Decl. ¶¶ 18-28). The above facts related to Defendant's significant and unexplained failure to abide by the Court's January 29, 2019 order evidence the absurdity of this argument which is not supported by any legal citations.

The truth is Plaintiff's counsel, in good faith, sought to resolve this matter prior to filing this motion by agreeing to allow Defendant to produce additional documents even though Defendant's time to produce those documents had expired per the Court's January 29, 2019 order. As is

evidenced by counsels' correspondence, particularly Plaintiff's counsel's February 19, 2019 letter, Plaintiff advised Defendant of the specific issues she viewed as problematic with Defendant's February 13, 2019 production. These are the very same issues relevant to this motion. The letter also provides that even though Defendant's time to produce documents in accordance with the Court's January 29, 2019 order had expired, Plaintiff was willing to agree to an extension of time for damages discovery so long as Defendant agreed to produce additional documents and make the appropriate application to the Court for that extension. Defendant chose not to provide any additional documents or make an application for an extension of time. Instead, Defendant threatened Plaintiff's counsel with a cross motion for Rule 11 sanctions in the event the instant motion was filed.  Not surprisingly, no such cross motion was filed.

E.      The appropriate sanction is the entry of a default judgment against Defendant.

The Second Circuit has maintained that entry of a default judgment is a wholly appropriate sanction when the disobedient party acts willfully. *Update Art, Inc v. Modline Pub'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1062 (2d Cir. 1979) (default judgment entered against defendants who acted in bad faith and refused to comply with discovery orders). Such a sanction is necessary in order "to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Id.*

A similar sanction was upheld by the Second Circuit in *Penthouse Int'l Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 382 (2d Cir. 1981). There the party who had willfully and repeatedly disobeyed the district court's discovery orders at least claimed that it had made an "innocent mistake." Here, Defendant, who has already been sanctioned for similar misconduct, doesn't even offer an explanation as to why he was unable to produce the bank documents at issue. Defendant is of the opinion that his simple "say so" that he requested the documents from the banks is all that's needed to show his "full compliance" with the Court's January 29, 2019 order. As per

Defendant's thinking, the Court does not need to know any particulars about the making of these requests or why documents weren't produced. Defendant's perpetual disrespect for his discovery obligations and, more importantly, this Court's orders should no longer be tolerated.

The Court must issue the most stringent of sanctions against Defendant. Defendant has already been sanctioned via an adverse jury instruction and that lesser sanction has proven to be completely ineffective in deterring Defendant from once against "deliberately block[ing] plaintiff's access to the proof essential to make out [her] claim." *See Conway v. Dunbar*, 121 F.R.D. 211, 212-13 (S.D.N.Y. 1988). Defendant has acted willfully, in bad faith, and with fault.  Entering a default judgment against Defendant is an entirely appropriate and just sanction. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the sanctioned party."); *Gutman v. Klein,* 2008 U.S. Dist. LEXIS 92398, at *41-43, 2008 WL 4682208 (S.D.N.Y. October 15, 2008). Defendant should be found liable for breach of the parties' oral joint venture agreement and Plaintiff should be permitted to now prove her damages to the Court unopposed by Defendant. *See Gross v. Trinidad & Tobago Tourist Bd.*, 1988 U.S. Dist. LEXIS 11831, at *22-23 (S.D.N.Y. 1988).

Plaintiff should also be awarded her reasonable attorney's fees and costs related to this motion and her previous motion compelling the production of documents subject to the Court's January 29, 2019 order.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for sanctions, specifically the entry of a default judgment against Defendant pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi); that Plaintiff be awarded her attorney's fees and costs related to her November 26, 2018 motion compelling disclosure, pursuant to Fed. R. Civ. P. 37(a)(5)(A); that Plaintiff be awarded her attorney's fees and costs related to this instant motion, pursuant to Fed. R. Civ. P.

37(b)(2)(C); and that the Court enter an order granting such other and further relief that it may deem

just and appropriate.

Dated:  April 5, 2019
        Rye Brook, New York

_____
HOWARD A. BENDER, ESQ.
Attorney for Plaintiff
800 Westchester Avenue, Suite 641-N
Rye Brook, New York 10573
Ph: 914.921.1998
Fax: 914.368.9705
hbender@benderesq.com