UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JENNY RAMGOOLIE,                                :
                                                :
                              Plaintiff,        :
                                                :
                -against-                       :
                                                :
ANDY RAMGOOLIE,                                 :
                                                :
                              Defendant.  :
------------------------------------------------------------ X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED:____9/10/2019____     │
└─────────────────────────────────┘
```

16-CV-3345 (VEC)(SN)

<u>ORDER</u>

VALERIE CAPRONI, United States District Judge:

Plaintiff Jenny Ramgoolie has moved for the entry of a default judgment against

Defendant Andy Ramgoolie as a discovery sanction for failing to comply with a January 29,

2019 order issued by Magistrate Judge Netburn, who was supervising discovery in this matter.

*See* Dkts. 182-83.  Although a default judgment is a severe sanction, upon consideration of the

entire record and history of this case, it is appropriate.  Accordingly, Plaintiff's motion for

sanctions is GRANTED; a default judgment is entered against Defendant; and Defendant is

ordered to pay Plaintiff's attorney's fees and costs associated with this motion and Plaintiff's

November 26, 2018 motion to compel.

## BACKGROUND[1]

Plaintiff Jenny Ramgoolie sued Defendants Andy Ramgoolie, Jeremy Ramgoolie, Kevin

Ramgoolie, Annie Ramgoolie, AANDCO Healthcare Ltd ("AANDCO"), and KDR Medical

Care Ltd. ("KDR") for breach of contract and other state-law claims.  Dkt. 1.  All defendants

other than Andy Ramgoolie have been dismissed for lack of personal jurisdiction.  *See* Dkts. 67,

88.

---

[1]      This order assumes familiarity with the facts of this matter.

As discussed in this Court's decision on the parties' cross-motions for summary judgment, according to Plaintiff, in July 2010, she and Defendant (who is her brother) orally agreed to open a dialysis center in Trinidad and Tobago. *See* Dkt. 149 at 3. They agreed that Defendant would finance the venture and that Plaintiff would conduct research, assist in starting the business, and assist in managing its operations. *Id.* Plaintiff asserts that she and her brother agreed that they would each own half of the venture and that profits would be used to repay Defendant's cash investment, after which profits and losses would be shared equally. *Id.* Defendant denies that there was any such agreement. *Id.*

Over the next year and a half, Plaintiff conducted extensive industry research, retained a consultant, and prepared a business plan, ultimately sending Defendant an email in December 2012 referencing a business plan and a "50/50 business deal." *See* Dkt. 149 at 3. Although Defendant did not respond in writing, Plaintiff continued to work towards opening the business, and AANDCO was incorporated in Trinidad and Tobago in April 2013. *Id.* Defendant and the parties' nephew Kevin Ramgoolie were listed as directors. *Id.* Plaintiff claims that she was not included on the corporate documents because of a court case involving her son and the perceived potential for negative publicity. *Id.* She played an active role in developing and managing the business but received no salary or other compensation. *Id.* Defendant has neither confirmed nor denied the array of tasks Plaintiff allegedly accomplished; instead, Defendant asserts that Plaintiff was an administrator and employee, not an owner. *Id.* Plaintiff alleges that she was surprised to learn that her nephew Kevin was listed as a fifty-percent owner of the company. *Id.* She also states that she was unaware until after she filed this lawsuit that AANDCO had issued additional shares to Defendant, Kevin, and other family members in October 2014. *Id.* Plaintiff sent Defendant emails throughout 2015 asking that she be paid for her work for the dialysis

business, but the emails are inconsistent as to whether she was seeking a portion of the profits, salary, or consulting fees.  *Id.* at 3-4.  In January 2016, Kevin Ramgoolie incorporated a new business, KDR Medical Care Ltd. ("KDR"), which purchased all of AANDCO's assets; Plaintiff believes that KDR was created to prevent her from benefitting from the original agreement between her and Defendant.  *Id.* at 4.

Following acrimonious liability discovery, which included Defendant's failure to produce requested documents, *see* Dkt. 149 at 4, the parties' cross motions for summary judgment were denied, *see id.* at 21, and the case proceeded to discovery on damages, *see* Dkt. 169.  Faced with obviously incomplete discovery productions from Defendant,[2] Plaintiff moved on November 26, 2018 to compel Defendant to produce additional documents.  *See* Dkt. 170.  In a January 29, 2019 order ruling on that motion, Magistrate Judge Netburn reaffirmed her earlier finding during a discovery conference that Defendant has access to AANDCO's corporate records.  *See* Dkt. 181 at 4 (the "January 29 Order"); *see also* Dkt. 100 (tr. of Oct. 4, 2017 discovery conference). Accordingly, Judge Netburn ordered Defendant to search for and produce AANDCO bank records and other AANDCO financial records.  Dkt. 181 at 4-6.  Judge Netburn further concluded that Defendant was, at a minimum, affiliated with Direct Med—a Trinidadian medical-supply company that sold supplies to KDR—and therefore ordered that Defendant also produce documents related to business transactions between Direct Med and KDR.  *Id.* at 6-7.

In sum, the January 29 Order ordered Defendant to search for and produce (1) AANDCO's bank statements between 2014 and 2016, including a number of specific items that Plaintiff had identified, *see* Dkt. 181 at 4; (2) the financial records on which AANDCO's

---

[2]        For example, Defendant produced some records from a bank account but provided no records regarding that account that related to transactions occurring after April 30, 2016, even though Plaintiff had persuasive evidence (i.e., evidence of a wire transfer) that the account continued to be used after that date.  Dkt. 181 at 3.

accountant relied to conclude that AANDCO had made no payments to Defendant from May

2013 through April 2016, *id*. at 5-6; and (3) documents in Defendant's possession relating to

Direct Med's business transactions with KDR, *id*. at 6-7.

 On February 27, 2019, Plaintiff filed this motion for sanctions against Defendant,

arguing that he has failed to comply with the January 29 Order.  *See* Dkts. 182-83.  After that

motion was fully briefed, the Court cancelled the reference to the Magistrate Judge.  *See* Dkt.

215.

## FINDINGS OF FACT

In response to the January 29 Order, Defendant produced one new bank statement for

Account 927, five new periodic statements for Account 801, and approximately 20% of the

cancelled checks from one of AANDCO's multiple bank accounts.  *See* Dkt. 190 (Bender Reply

Decl.) ¶¶ 2-5 & n.1.  Defendant produced no other documents that had not already been

produced before the January 29 Order.  *Id.*

Defendant willfully failed to comply with the portion of the January 29 Order directing

him to personally request and produce AANDCO bank records.  *See* Dkt. 181 at 4.  In his

declaration in opposition to Plaintiff's motion to compel, Defendant vaguely states that he

"requested the records from the Banks" and "made several calls to Trinidad."  Dkt. 188 (A.

Ramgoolie Decl.) ¶ 4.[3]  The only evidence he has provided corroborating that he did anything is

an email *from* his nephew Kevin Ramgoolie.  In the email, Kevin reported that he had sent to the

Defendant  "as much information that I can" and that he—not Defendant—had "requested the

balance of missing cheques and other info [from the banks], however the bank did not meet my

---

[3]      The Court presumes that Defendant meant to say that he placed "several calls to persons in Trinidad."
Curiously left unsaid was to whom those calls were placed, when, and the contents of the conversations.

request." *Id*. ex. 2.[4]  It is clear that Defendant had the authority to obtain AANDCO's financial records directly from the banks, and Magistrate Judge Netburn ordered Defendant, in no uncertain terms, personally to request very specific documents.  *See* Dkt. 181 at 4.  Indeed, Judge Netburn's order specified by account number the accounts for which records were to be obtained.  *Id.*  Because Defendant has failed to establish that he directly contacted the banks and requested the documents, the Court finds that he did not make a good-faith effort to comply with the January 29 Order.

Defendant also willfully failed to search for and obtain the financial records underlying the statement from AANDCO's purported accountant, R. Ramdass & Co. ("Ramdass"), as the January 29 Order also required.  *See* Dkt. 181 at 5-6.  During discovery, Defendant produced an opinion letter from Ramdass stating, "We have examined the financial records of Aandco Healthcare Limited for the years ended April 30, 2014, 2015, and 2016, and have found no payment (cheque or cash) was issued to Mr. Andy Ramgoolie."  Dkt. 181 at 5.  As explained in detail in the January 29 Order, Judge Netburn concluded that Defendant's document productions up to January 29, 2019 were incomplete because they did not include "financial records" that would have permitted Ramdass to draw the conclusion it did.  Dkt. 181 at 5-6.  Nevertheless, Defendant asserts that the "financial records" on which Ramdass relied have already been produced in response to the January 29 Order; he also asserts that he has attached those documents to his declaration as Exhibit 3.  *See* Dkt. 188 (A. Ramgoolie Decl.) ¶ 9; *id.* ex. 3.

Defendant's assertion that he produced all of the records underlying Ramdass's conclusion is not credible.  The documents attached as Exhibit 3 to his declaration are the same

---

[4]    Like Defendant's vague assertions of calls to Trinidad, Kevin Ramgoolie's email is devoid of any particulars.  The email does not indicate when or from whom Kevin asked for "the balance of missing cheques and other info."  Dkt. 188 ex. 2 (K. Ramgoolie email).  Nor does it provide any explanation why the bank did not "meet [his] request."  *Id.*

documents that Judge Netburn long ago concluded were an insufficient basis for an accountant to conclude that AANDCO has never paid Andy Ramgoolie. The Court agrees with Judge Netburn that no accountant could conclude from a review of those documents whether AANDCO made any payments to Andy Ramgoolie.

It is possible, of course, that the accountant's opinion (which was produced by Defendant for the first time during this litigation) is fraudulent. Plaintiff, however, has filed a letter from Ramdass, in response to a request from Defendant, stating that all "source documents" that were relied upon to issue its opinion letter "were returned/left at the Company's business place." Dkt. 182 (Bender Decl.) ex. D. This indicates that AANDCO has other documents in its possession on which Ramdass based its opinion. There is no evidence, however, that Defendant made any efforts—let alone any good-faith efforts—to obtain from his own company the records that Ramdass returned to the Company's place of business. The failure to make such efforts is another willful violation of the January 29 Order.

Finally, the January 29 Order directed Defendant to produce all documents in his control relating to Direct Med's business transactions with KDR. *See* Dkt. 181 at 6-7. It is undisputed that Defendant has produced nothing in response to this part of the January 29 Order. In opposing this motion, Defendant states that he has "no knowledge, control, records, or access of these foreign entities." Dkt. 188 (A. Ramgoolie Decl.) ¶ 10. Defendant testified that he worked for Direct Med as a consultant. *See* Dkt. 181 at 7. Although Plaintiff contends that Defendant's nephews, Kevin and Jeremy Ramgoolie, are Direct Med's directors and that Direct Med's attorney is also Defendant's attorney in on-going litigation in Trinidad, the Magistrate Judge never concluded that Defendant has legal access to or control over either KDR or Direct Med (even if he appears to have informal or familial access). Thus, on this record, the Court accepts

Defendant's representation that he searched for documents responsive to this part of the January 29 Order and that he found none.

In short, Defendant has willfully failed to comply with the January 29 Order with respect to the production of AANDCO's bank records and financial records supporting the accountant's opinion letter.  There is no evidence of a failure to comply with the January 29 Order as to the Direct Med records.

## DISCUSSION

Plaintiff seeks a default judgment under Rule 37 of the Federal Rules of Civil Procedure. In relevant part, Rule 37(b) provides that if a party "fails to obey an order to provide . . . discovery," the court may "render[] a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A).  The decision whether to impose such a sanction is within the district court's sound discretion.  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,* 694 F.3d 155, 159 (2d Cir. 2012) (internal citations omitted).

In exercising discretion under Rule 37, courts consider the following factors: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party has been warned of the consequences of noncompliance.  *World Wide Polymers*, 694 F.3d at 159 (citing *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009)).  In addition, courts often consider any prejudice suffered by the movant.  *See, e.g.*, *Local Union No. 40 v. Car-Win Constr., Inc.*, 88 F. Supp. 3d 250, 263 (S.D.N.Y. 2015).  Although prejudice may "serve as a compelling consideration in support of dispositive relief," a lack of prejudice "should not be given significant weight in the overall analysis."  *Id.* (citing *S. New England Tel. Co. v.*

*Global NAPS Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) ("[W]e, along with the Supreme Court, have

consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions . . . .")).

These factors are not exclusive, and it is not an abuse of discretion to impose sanctions

where only some of the factors have been implicated.  *S. New England*, 624 F.3d at 144.  Indeed,

although severe, entering a default judgment is appropriate upon a finding of "willfulness, bad

faith, or any fault on the part of the noncompliant party."  *Guggenheim Capital, LLC v.*

*Birnbaum*, 722 F.3d 444, 450-51 (2d Cir. 2013) (quoting *Bobal v. Rensselaer Polytechnic Inst.*,

916 F.2d 759, 764 (2d Cir. 1990)).  Any decision under Rule 37 should be made in light of the

full record in the case.  *Cline Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,

602 F.2d 1062, 1068 (2d Cir. 1979) (citations omitted).

Here, each of the relevant factors supports entering a default judgment against Defendant.

### A.  Willfulness

Noncompliance with a court's discovery order is willful when the order is clear, the party

understood the order, and the failure to comply is not due to factors beyond the party's control.

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL

3671036, at *21 (S.D.N.Y. July 18, 2017) (quoting *Thompson v. Jam. Hosp. Med. Ctr.*, No. 13-

CV-1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015)), *adopted by* 2017 WL 4712639

(S.D.N.Y. Sept. 28, 2017).  Applying this standard, the Court concludes that Defendant's

noncompliance was willful.

First, Judge Netburn's January 29 Order was clear and unambiguous.  Regarding

AANDCO's bank statements, the Order directed Defendant to "request [the discovery

documents] from the relevant banks."  Dkt. 181 at 4.  The Order also directed Defendant to

"search for and produce" the financial records referenced in the opinion letter from Ramdass and

"to request th[o]se documents from Ramdass." *Id.* at 5. Judge Netburn reiterated these requirements in the Order's conclusion, making clear that Defendant himself was required "to request those documents from" the banks and Ramdass . *Id.* at 7-8.

It is clear that Defendant understood these obligations. In his opposition to Plaintiff's motion for sanctions, Defendant explicitly acknowledges that he was ordered to "directly request the documents from the relevant banks . . . and from Ramdass." Dkt. 187 ¶¶ 6 ("[A]s to the Aandco Bank statements, Andy was not only to again search for the records, but he was Ordered [*sic*] to directly request the documents from the relevant banks themselves."), 8 ("[A]s to the financial records, Andy was again Ordered [*sic*] to directly request the documents from Ramdass . . . ."). Defendant himself acknowledges the same in his declaration. Dkt. 188 (A. Ramgoolie Decl.) ¶¶ 4, 9. Defendant does not contend that he was confused by the January 29 Order, and the Court sees no evidence to support such a finding, especially because he has been represented by counsel at all relevant times.

Finally, the Court finds that Defendant's failure to comply with the January 29 Order were not due to factors beyond his control. Rather than explain his noncompliance, Defendant boldly claims that he has "requested the records from the Banks and the accountant Ramdass" and that he made "several calls to Trinidad" and "emailed with AANDCO people in Trinidad" to "try to identify and/or locate the relevant banks." Dkt. 188 (A. Ramgoolie Decl.) ¶ 4. But Defendant provides no evidence corroborating that these communications actually occurred and offers no particulars regarding what he actually said to the banks or to "AANDCO people in Trinidad." In fact, Defendant's evidence indicates that he did *not* personally request the documents as the January 29 Order required: the email from Kevin Ramgoolie, Defendant's nephew, states that Kevin, not Defendant, requested AANDCO's bank records. Dkt. 188 (A.

Ramgoolie Decl.) ex. 2.  This was plainly contrary to the Court's order.[5]  Similarly, although Defendant produced an email from Ramdass indicating that he had personally requested records from Ramdass, Ramdass's email in response states that Ramdass left the relevant financial records at AANDCO's "business place."  Dkt. 182 (Bender Decl.) ex. D.  Defendant has failed to produce those records, *see* Dkt. 190 (Bender Reply Decl.) ¶¶ 2-5 & n.1, and he offers absolutely no explanation for that failure, let alone an explanation tending to show that his noncompliance was due to circumstances beyond his control, rather than because of his own sloth or intransigence.

In short, despite understanding the Court's unambiguous orders regarding the AANDCO bank records and the Ramdass documents, Defendant has made—at *best*—a pathetically half-hearted effort to comply.  "Without . . . resorting to the dictionary, this seems as good a definition of 'willful' as any."  *Local Union No. 40*, 88 F. Supp. 3d at 264.  The fact that this is not Defendant's first brush with discovery sanctions further confirms that Defendant acted willfully when he failed to comply with the January 29 Order.  As discussed in Part B below, Judge Netburn has already imposed—and this Court has affirmed—an adverse-inference jury instruction against Defendant as a sanction for his failure to produce relevant documents within his possession and control notwithstanding several court orders directing him to do so.  *See* Dkt. 139 (R&R) at 25-27; Dkt. 149 (order adopting R&R) at 15-20; *see also Doe v. Delta Airlines,*

---

[5]       In his email to Defendant, Kevin Ramgoolie states that some of AANDCO's banking information was lost, displaced, or damaged after an earthquake in August 2018.  *See* Dkt. 188 (A. Ramgoolie Decl.) ex. 2.  If that is true, then Defendant could have produced a sworn statement by someone with firsthand knowledge to that effect, but he did not do so.  In any event, the supposed earthquake appears to be more of a the-dog-ate-my-homework excuse than an act-of-God justification for Defendant's inability to produce the AANDCO records.  Other than the passing reference in Kevin's email, Defendant's opposition papers and declarations entirely fail to mention the earthquake.  Nor did Defendant mention this purported earthquake in response to Plaintiff's original motion to compel filed in November 2018.  *See* Dkt. 106.  In any event, even if *some* of the records may have been damaged in an earthquake, that does not excuse Defendant's failure to contact the banks himself or his failure to produce the financial records that were left with AANDCO by Ramdass.  (In all events, it is hard to believe that the only records the bank had were hardcopy documents subject to being lost in an earthquake.)

*Inc.*, No. 13-CV-6287, 2015 WL 798031, at *8 (S.D.N.Y. Feb. 25, 2015) ("Willful

noncompliance is routinely found, for instance, where a party has repeatedly failed to . . .

produce documents . . . in violation of the district court's orders." (internal citations and

quotation marks omitted)).

#### B.  Efficacy of Lesser Sanctions

Consistent with the purposes of Rule 37, one of which is to ensure that a party will not

benefit from its own discovery abuses, *see Local Union No. 40*, 88 F. Supp. 3d at 265, the Court

has considered whether a sanction less severe than default judgment would be efficacious.

Because of Defendant's noncompliance, Plaintiff has been unable to obtain relevant information

regarding her alleged damages—the entire point of having damages discovery in the first place.

Defendant should not be permitted to benefit from his own continued recalcitrance by

undercutting Plaintiff's ability to prove her case, her ability to do so being dependent on the very

evidence he has withheld.

The history of Defendant's intransigence during discovery in this case further confirms

that a sanction other than a default judgment would not be effective.  On September 14, 2017,

Plaintiff filed a motion to compel Defendant to produce various business records from

AANDCO.  *See* Dkt. 89.  During a conference on October 4, 2017, Judge Netburn determined

that Defendant had control over these records and concluded that they were relevant to Plaintiff's

claims. Dkt. 100 (tr. of Oct. 4, 2017 discovery conference) at 4, 6, 11.  Accordingly, in an order

issued the same day, the Court directed Defendant to produce the requested documents no later

than November 1, 2017.  *Id.* at 14; *see also* Dkt. 93 ("As discussed at the discovery conference

held on October 4, 2017, Defendant is ORDERED to produce the relevant documents related to

AANDCO Health Care Ltd. on a rolling basis and no later than November 1, 2017.").  Defendant

did not object to the Magistrate Judge's order or ask her to reconsider her finding that Defendant had control over the AANDCO records.

Defendant failed to produce any documents by the November 1 deadline. *See* Dkt. 95. Therefore, on November 8, 2017, Plaintiff asked the Court to sanction Defendant for his failure to comply with the Court's October 4 order. *Id*. at 1-2. On November 14, the Magistrate Judge held a conference to discuss the parties' dispute. *See* Dkt. 97. Regarding the AANDCO materials, Defendant stated that he had been unable to obtain any documents and that, although he believed that Plaintiff's requests for those documents were irrelevant, he had not articulated this objection in a form that was compliant with the Federal Rules. Dkt. 102 (tr. of Nov. 14, 2017 conference) at 5-6, 23-24. To avoid ruling in the abstract, the Magistrate Judge ordered Defendant to serve completed discovery objections no later than November 27, 2017. *Id.* at 24-25. Judge Netburn also stated that Plaintiff could file a motion to compel if Defendant's objections were inadequate. *Id.*

On November 27, 2017, Plaintiff filed—for a second time—a motion to compel Defendant to produce the AANDCO records. *See* Dkt. 104. In an order dated December 18, 2017, Judge Netburn concluded that Defendant had disobeyed her October 4 order by failing to produce documents in response to Plaintiff's discovery requests. *See* Dkt. 108 at 6-7; *see also* Dkt. 93 (Oct. 4, 2017 order). Judge Netburn authorized Plaintiff to file an application for appropriate relief in connection with her motion for summary judgment. *See* Dkt. 108 at 7. Plaintiff did so, asking the Court to sanction Defendant with a mandatory adverse-inference jury instruction. *See* Dkt. 118 (Mem. in Supp. of MSJ) at 20-25.

On August 3, 2018, the Magistrate Judge issued a Report and Recommendation recommending that the parties' motions for summary judgment be denied but that Plaintiff's

motions for sanctions against Defendant be granted.  *See* Dkt. 139 at 24-27.  Judge Netburn

recommended denying Plaintiff's request for a mandatory adverse-inference instruction in favor

of a discretionary adverse-inference instruction, concluding that the latter was more

commensurate with Defendant's conduct.  *Id.* at 26-27.  This Court ultimately adopted that

recommendation, although the undersigned opted to craft the precise language of the instruction

at trial.  *See* Dkt. 149 at 20.  Thus, Defendant has already been severely sanctioned for failing to

comply with the Court's discovery orders.  Yet despite its severity, the Court's prior sanction did

not deter Defendant from again failing to produce requested documents when ordered to do so by

the Court.  This pattern of noncompliance evidences a deliberate strategy of denying Plaintiff

access to the documents necessary to prove her case and, just as vitally, her damages.  An even

more robust sanction is now necessary to address—and hopefully break—Defendant's continued

intransigence.

Courts are not required to exhaust all possible lesser sanctions before imposing a default

judgment.  *S. New England*, 624 F.3d at 148.  Because Defendant has already been sanctioned

for similar conduct, the Court concludes that entering a default judgment is warranted.  This is

necessary not only to penalize Defendant for his continued violation of the Court's orders but

also to deter those who might be tempted to engage in such conduct in the future.  *See Nat'l*

*Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *S. New England*, 624

F.3d at 148 ("[T]he district court was justified in concluding that lesser sanctions would be

ineffective to achieve compliance [because the defendant] had already been sanctioned for its

failure to comply with [the court's] discovery orders."); *Local Union No. 40*, 88 F. Supp. 3d at

265 (finding that dispositive sanctions were appropriate where the defendant had violated a prior

order imposing sanctions).

### C.   Duration of Noncompliance

Periods of noncompliance as brief as a few months may merit dispositive sanctions.  *See, e.g., Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (three months); *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (four months).  And periods of greater than five months favor such sanctions even more heavily.  *See*, *e.g., Agiwal*, 555 F.3d at 303 (six months); *Phelan v. Campbell*, 507 F. App'x 14, 16 (2d Cir. 2013) (seven months); *Battiste-Downie v. Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (one year).

Plaintiff served the relevant document requests on September 7, 2018.  *See* Dkt. 170 ex. (Bender aff.) ¶ 2; *id.* ex. A.  Defendant's response contained numerous deficiencies, and, in the January 29 Order, the Court ordered Defendant to produce additional documents.  *See* Dkt. 181. Seven months have come and gone, and Defendant has still failed to comply with the Court's order in two critical respects and has made, at best, a pathetic effort to do so.  This is more than enough time to merit dispositive sanctions.

Moreover, as discussed above, a similar pattern of noncompliance occurred during liability discovery.  Plaintiff served document requests on August 23, 2017, *see* Dkt. 89; *id.* ex. A, and on October 4, 2017—after Plaintiff sought a conference—the Court ordered additional production, *see* Dkts. 93, 100.  Yet Defendant remained noncompliant through the close of fact discovery on February 26, 2018, a full four months after the Court's order, and, even then, his ultimate production was anemic, consisting of only a few pages of documents.  *See* Dkt. 139 at 10-11, 26.  This extended and continuing duration of noncompliance during both liability and damages discovery supports entering dispositive sanctions against Defendant.

### D.  Prior Warnings

A court must provide sufficient notice to the offending party before entering dispositive sanctions.  *Guggenheim Capital*, 722 F.3d at 452.  Warnings need not mention the phrase "default judgment"; regular warnings that noncompliance may result in discovery sanctions are adequate.  *Id.*  The Court provided just those kinds of warnings here.

The Magistrate Judge directed Defendant to comply with her discovery orders on October 4, 2017, and again on November 14, 2017.  *See* Dkt. 100 (tr. of Oct. 4, 2017 discovery conference) at 10-11, 14; Dkt. 102 (tr. of Nov. 14, 2017 conference) at 7, 23-25.  At the November 14, 2017 conference, she repeatedly warned Defendant that continued failure to comply with discovery orders would result in sanctions under Rule 37(b)(2)(A).  *See* Dkt. 102 (tr. of Nov. 14, 2017 conference) at 7 ("THE COURT: . . . So if you're now telling me that he is not going to be producing them then the plaintiffs have every right to make an application for the adverse inference at trial as to what those documents would actually show."); *see also id.* at 11, 19.  And when Defendant failed to comply, Judge Netburn invited Plaintiff to make an application for appropriate sanctions relief.  *See* Dkt. 108 at 7.  If these were not sufficient warnings that noncompliance with discovery orders would result in Rule 37(b)(2)(A) sanctions—including sanctions directly bearing on the merits of the case—this Court removed all doubt in its August 2018 summary-judgment order when it imposed a discretionary adverse-inference jury instruction as a sanction for failure to produce discovery.  *See* Dkt. 149 at 15-20.  That sanction put Defendant on notice that further failures to comply with the Court's discovery orders could result in other sanctions.

Nevertheless, Defendant's intransigence continued.  This led to the January 29 Order, which directed Defendant personally to search for and produce responsive documents.  *See* Dkt.

181.  After reviewing Defendant's supplemental production, Plaintiff warned Defendant during the parties' meet-and-confer process that she intended to move for sanctions.  *See* Dkt. 187 (Kodsi aff.) ¶ 23; *see also id.* ex. E.  Soon thereafter, Plaintiff filed this motion, expressly seeking a default judgment under Rule 37.  *See* Dkts. 182-83.

On these facts, Defendant "cannot seriously contend that [he was] not on notice of [his] discovery obligations or of the consequences of noncompliance . . . ."  *S. New England*, 624 F.3d at 148. In *Guggenheim Capital*, the Second Circuit held that the defendant was on sufficient notice when he received six separate warnings that noncompliance with discovery orders would result in Rule 37 sanctions: (1) a written order outlining the defendant's discovery obligations; (2) an order to show cause why contempt sanctions should not be imposed for a failure to respond to plaintiff's discovery requests; (3) chastising from the district court during a telephone call about defendant's conduct during a deposition; (4) a written order emphasizing that sanctions would be imposed if defendant continued to disrupt his deposition; (5) a statement from plaintiff in open court that it intended to seek a default judgment; and (6) the court's response that "we have reached the point . . . where I need to take action."  722 F.3d at 452.  The Magistrate Judge issued similar warnings in this case, and this Court previously imposed a significant sanction under Rule 37(b)(2)(A) against Defendant.  Defendant had more than sufficient notice that continued violation of the Court's orders could result in dispositive sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is granted, and the Court enters a default judgment against Defendant pursuant to Rule 37(b)(2)(A)(vi).  In addition, because Defendant's oppositions to Plaintiff's November 26, 2018 motion to compel and this sanctions

motion were not substantially justified, Plaintiff is awarded her attorney's fees and costs for making both motions. *See* Fed. R. Civ. P. 37(a)(5)(A); *id.* 37(b)(2)(C).

By separate order issued concurrently with this one, the Court returns this case to Magistrate Judge Netburn for general pretrial purposes, including (1) resolution of Plaintiff's pending contempt motion, *see* Dkts. 199-202; (2) resolution of Plaintiff's counsel's pending motion to withdraw, *see* Dkts. 197-98; (3) determination of the attorney's fees and costs that Defendant owes to Plaintiff pursuant to this order; and (4) an inquest on Plaintiff's damages, *see* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . conduct an accounting; . . . determine the amount of damages; . . . establish the truth of any allegation by evidence; or . . . investigate any other matter.").

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 182.

**SO ORDERED.**

Date:  **September 10, 2019**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**