```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/2020
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**JENNY RAMGOOLIE,**

                            **Plaintiff,**

            -against-

**ANDY RAMGOOLIE,**

                            **Defendant.**

-------------------------------------------------------------X

**16-CV-3345 (VEC)(SN)**

**CERTIFICATION OF FACTS,
CONCLUSIONS OF LAW,
AND PROPOSED REMEDY**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE VALERIE E. CAPRONI:**

      By motion dated July 1, 2019, plaintiff Jenny Ramgoolie ("Plaintiff") seeks an order holding defendant Andy Ramgoolie ("Defendant") in civil contempt for failure to pay Plaintiff's attorney's fees and costs incurred bringing a motion to compel and a motion for sanctions. ECF No. 199. Upon the facts set forth below, which I hereby certify, I recommend holding the Defendant in civil contempt.

**CERTIFIED FACTS**

      On September 6, 2018, Judge Caproni adopted, with minimal modification, the Report and Recommendation denying the parties' cross-motions for summary judgment and granting Plaintiff's motion for sanctions against Defendant for failing to comply with discovery orders. ECF No. 149. On April 5, 2019, I awarded Plaintiff attorney's fees and costs, totaling $18,712.32, incurred in connection with those motions. ECF No. 189. Plaintiff moves for a finding of civil contempt against Defendant for failure to pay part of the amount directed by the April 5, 2019 Order. ECF No. 199. Defendant opposes the motion. See ECF No. 210–11.

According to Plaintiff, Defendant has made two payments, one for $3,000 on May 1, 2019, and one for $2,500.00 on May 31, 2019, in partial satisfaction of the Court's April 5, 2019 Order. See ECF No. 201, ¶ 4. Plaintiff argues that Defendant continues to owe $13,212.32, plus interest. Plaintiff and Defendant agree that since May 31, 2019, Defendant has not made any additional payments and has refused to enter into a payment agreement to complete transfer of the amount due. Id.

## CONCLUSIONS OF LAW

**I.      Jurisdiction of the Magistrate Judge**

In the absence of the parties' consent to a magistrate judge's exercise of plenary jurisdiction pursuant to 28 U.S.C. § 636(c), a magistrate judge can neither grant nor deny a motion for contempt. A magistrate judge's role with respect to such a motion is limited by statute to certifying or declining to certify the facts as constituting contempt to the district court. See 28 U.S.C. § 636(e)(6). The magistrate judge may also issue an order requiring the individual found to have committed the acts in question to show cause before the district court why the individual should not be adjudged in contempt of court. See 28 U.S.C. § 636(e)(6). Where the magistrate judge has certified facts constituting contempt, the district court must make an independent determination of the facts certified and consider any additional evidence. See id. The determinations of whether the conduct constitutes contempt and, if so, what sanctions are appropriate are left to the district court's discretion. See 28 U.S.C. § 636(e)(6)(B); JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc., 03-cv-5562 (JGK)(AJP), 2006 WL 1148110 at *1 (S.D.N.Y. Apr. 28, 2006).

**II.     Civil Contempt**

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir.1995)).

The Court's power to impose a civil contempt sanction is, however, limited by a party's ability to comply with the Court's orders. See A.V. By Versace, Inc. v. Gianni Versace S.p.A., 446 F. Supp. 2d 252, 258 (S.D.N.Y. 2006) (citing Badgley v. Santacroce, 800 F.2d 33, 36–37 (2d Cir. 1986); see also United States v. Rylander, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with [a] civil contempt action."). "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). The alleged contemnor bears the burden of producing evidence that "clearly, plainly, and unmistakably" establishes "that compliance is impossible." Id. (emphasis in original). "Conclusory statements are inadequate to carry this burden," and "[t]he court is not required to credit the alleged contemnor's denials if it finds them to be 'incredible in context.'" Id. (quoting Maggio v. Zeitz, 333 U.S. 56, 76 (1948)). Further, "a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt." Schwarz v. ThinkStrategy Capital Mgmt. LLC, 09-cv-9346 (PAE), 2015 WL 4040558, at *10 (S.D.N.Y. July 1, 2015) (quoiting SEC v. Aragon Capital Advisors, LLC, 07-cv-919 (FM), 2011 WL 3278907, at *5 (S.D.N.Y. July 26, 2011)).

"[I]nability to pay is a defense only when it is impossible for the contemnor to pay <u>any portion</u> of the ordered disgorgement." SEC v. Zubkis, 97-cv-8086 (JGK), 2003 WL 22118978, at *4 (S.D.N.Y. Sept. 11, 2003) (emphasis added).

### III.     Defendant Should be Held in Civil Contempt

Defendant does not argue that the Court's Order directing him to pay Plaintiff's attorney's fees and costs is not clear or ambiguous, nor does he dispute that he continues to owe the balance of said fees and costs. Rather, Defendant only contends that he simply cannot afford to pay the remaining $13,212.32 due.

Defendant has failed to establish "clearly, plainly, and unmistakably" his inability to comply with the Court's order. Huber, 51 F.3d at 10; see also Yimby, Inc. v. Fedak, 17-cv-223 (PAC), 2017 WL 2693719, at *4 (S.D.N.Y. June 22, 2017). On February 13, 2020, I provided Defendant an opportunity to submit evidence of his financial situation based on representations made in his Opposition. ECF No. 239. In support of his claim that he is completely unable to pay, Defendant submits[1]: (1) A Letter from New York State Child Support Processing Center, showing Defendant's monthly obligation and arrears as of December 31, 2019; (2) an undated page from Defendant's matrimonial Stipulation of Settlement, showing Defendant's support arrears; (3) an email purportedly showing Defendant's support arrears as of May 4, 2019; (4) an invoice from Defendant's children's attorney, purportedly showing Defendant's overdue obligation to pay fees; (5) a "Turn-Off of Service Notice" dated January 8, 2020, for services to a

---

[1] Defendant requested *in camera* review of evidence of his inability to pay, citing privacy concerns. The Court granted Defendant permission to file evidence of his finances on the docket by February 21, 2020, limiting access to the parties and the Court. See ECF No. 239. Rather than docket this evidence, Defendant mailed a copy, which was received on February 24, 2020. There is no proof that Defendant served a copy of these documents upon the Plaintiff, who is proceeding *pro se*. The Court is simultaneously issuing an order directing Defendant to file his evidence on the public docket, with limited redactions, and serve a copy of these documents upon Plaintiff.

particular address in Manhattan, NY ("Property #1"), from an electric company; (6) Defendant's "only bank account" statement, showing a negative balance as of December 6, 2019; (7) W-2 paystubs for 2017-19 and a paystub dated December 28, 2019, for income earned from Ship Wrecked Bar and Grill, Inc., d/b/a "Wicked Willy's"; (8) a stipulation entered by Defendant with the New York State Department of Labor (the "Department"), showing past and future amounts Defendant owes to the Department; (9) Wicked Willy's December 2019 Capital One checking account statement; (10) Information about a mortgage in Defendant's name, reflecting an amount due on November 1, 2019, for a mortgage on Property #1; (11) Information about a mortgage in Defendant's name, reflecting an amount due on November 1, 2019, for a mortgage on a particular property in South Ozone Park, NY ("Property #2"); (12) an invoice for rent and charges due on or around December 15, 2016, for occupancy of a residence in Manhattan, NY ("Property #3"); a common charge invoice due December 1, 2019, for Property #1; (13) a New York State Department of Finance property tax lien for a property in Queens, NY (Property #4) due October 1, 2019; and (14) evidence of purported loan arrangements and payments to Defendant from two individuals.

This documentation does not unequivocally establish that Defendant has a "complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions." See Huber, 51 F.3d at 10. Absent more comprehensive evidence such as tax returns or documents relating to a petition for bankruptcy, the information submitted by Defendant paints—at best—an incomplete portrait of his actual financial status. See Yimby, 2017 WL 2693719, at *4. Furthermore, while Defendant summarily denies that he has significant financial resources available from revenue sources or capital which may be held in other individuals' names or which may not be reported among the documents Defendant provided, Plaintiff has

5

raised a strong inference that Defendant has access to additional resources. Most significantly, Plaintiff demonstrates that Defendant's child support amount reflects a higher income than Defendant reports here. Additionally, Defendant's employee income from Ship Wrecked Bar and Grill, Inc., d/b/a "Wicked Willy's" does not account for any profits earned as its owner. Defendant also does not claim inability to obtain funds from outside sources, such as loans from those whom he has secured funding in the past (as evidenced by his submissions opposing the motion) or other sources.

      Moreover, Defendant paid Plaintiff on two occasions in May 2019. The bulk of Defendant's evidence, however, shows Defendant's financial obligations as of late 2019 and early 2020. To the limited extent that Defendant's evidence provides information about his recurring monthly payment obligations, such evidence only partly supports Defendant's position that as far back as last May, he was unable to pay any part of the amount ordered by the Court. In any case, it is far from "clear[], plain[], and unmistakable[]" that Defendant was unable to make the Court-ordered payment between May and July 2019. Huber, 51 F.3d at 10. For example, Defendant, in his opposition to the contempt motion, dated July 31, 2019, stated that he was "committed to making monthly payments to [Plaintiff's counsel]" but that due to the timing—not the amount—of the payments, Defendant had to prioritize payment to his own attorney in order to oppose Plaintiff's contempt motion. See ECF No. 211, ¶ 11. Defendant's admission of his ability to pay his own counsel seriously undermines the argument that it was (or continues to be) impossible for him to pay Plaintiff per the Court's order. See Yimby, 2017 WL 2693719, at *4; Huber, 51 F.3d at 11 ("[T]he district court on remand found that Huber's assertions that he was unable to pay were incredible and that, in light of his demonstrated ability to, *inter alia*, finance

his post-February 1994 litigation, Huber had the ability to pay the fines and had not carried his burden of proving his inability to pay.").

## RECOMMENDED REMEDY

Based on the facts certified above, I conclude that Defendant has not met his burden of showing the impossibility of complying with the Court's order. Accordingly, I recommend holding Defendant in civil contempt and ordering Defendant to pay the remainder of the previously ordered costs and fees, $13,212.32, plus interest at the federal interest rate, 28 U.S.C. § 1961, as well as Plaintiff's counsel's fees and costs incurred in bringing the contempt motion, within thirty days from a final ruling on this motion.

## CONCLUSION

For the reasons set forth herein, I certify the facts as constituting contempt and recommend that Plaintiff's request for fees and costs be GRANTED.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   February 25, 2020
         New York, New York

cc:   Jenny Ramgoolie (*by Chambers*)
      9402 Calwood Cir.
      Spring, Texas 77379

\*         \*         \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS CERTIFICATION/REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).