UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JENNY RAMGOOLIE,

         **Plaintiff,**         16-CV-3345 (VEC)(SN)

    -against-             **OPINION & ORDER**

ANDY RAMGOOLIE,

         **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

  On September 10, 2019, the Court awarded plaintiff Jenny Ramgoolie ("Plaintiff") attorney's fees and costs incurred in bringing two successful motions and referred the matter to me to determine the amount defendant Andy Ramgoolie owes Plaintiff pursuant to that decision. (ECF No. 216.) Upon the submissions by Plaintiff, now acting *pro se*, and her former attorney Howard Bender ("Bender"), and for the reasons set forth below, I conclude that Defendant owes $20,493.75.

  Furthermore**,** on October 7, 2019, the Court granted Bender's motion to withdraw as counsel of record for Plaintiff. (ECF No. 226.) In its Opinion and Order, the Court reserved ruling on Bender's requests for a charging lien and a retaining lien for his prior representation of Plaintiff. (Id.) Bender's request to fix a charging lien, pursuant New York Judiciary Law § 475, is GRANTED in part in the amount of $148,753.65, and Bender's request to fix a retaining lien, pursuant to New York common law, is GRANTED in the amount of $26,098.50.

**BACKGROUND**

The Court assumes familiarity with the procedural history and facts of the underlying case, described in the Court's adjudication of the parties' cross-motions for summary judgment. (See ECF Nos. 139, 149.) Accordingly, only the facts that are relevant to the assessment of a charging lien and a retaining lien are set forth below.

On February 2, 2017, Plaintiff and Bender entered a retainer agreement under which Bender would represent Plaintiff, who commenced this action on her own, solely to defend against a motion to dismiss. (See ECF No. 198, "Bender Decl.," ¶ 2.) In August 2017, Plaintiff and Bender entered a new retainer agreement under which Bender would represent Plaintiff for all purposes on a mixed contingency fee/billable hour basis. (Id., ¶ 4.) According to the arrangement, Plaintiff agreed to make monthly payments of all hourly time charges (at a discounted rate) and out-of-pocket expenses incurred by Bender on a month-to-month basis. (Id., ¶ 5.) The contingency portion of Bender's fee would be based on a fixed percentage of the Plaintiff's recovery as a result of the action. (Id., ¶ 4.)

During his representation of Plaintiff, Bender handled fact and expert discovery, including the litigation of several discovery disputes, and argued several motions—to dismiss, for summary judgment, for discovery sanctions, and for civil contempt—among other matters. From Bender's first appearance in August 2017, until his motion to withdraw in June 2019, Bender alleges he worked more than 537 hours.

Bender claims that by June 2019, Plaintiff had fallen significantly behind her monthly payments and owed Bender approximately $26,098.85. According to Bender, several good faith attempts to resolve payment issues with Plaintiff failed before Bender filed a motion to withdraw. (Id., ¶ 7.) Plaintiff initially opposed the motion. The Court held a phone conference to

hear arguments on the motion to withdraw, during which Plaintiff withdrew her opposition. (ECF No. 226.) The Court granted the motion to withdraw on October 7, 2019, but reserved its decision on Bender's request for a charging lien and a retaining lien. (Id.) On October 10, 2019, Bender supplemented his briefing in support of his motion for a charging lien and a retaining lien to reflect work performed through September 2019. (ECF No. 227.)

## DISCUSSION

### I.  Attorney's Fees Awarded by the Court's September 10, 2019 Order

By Order dated September 10, 2019, the Court granted two of Plaintiff's motions: a motion to compel (ECF No. 170) and a motion for sanctions (ECF No. 182) (together, the "Motions"). By the same Order, the Court awarded Plaintiff attorney's fees and costs for litigating those Motions and referred the matter to me to determine the amount of the award. (ECF No. 216.) Bender provided contemporaneous timesheets in support of his application for an award of $20,493.75. (ECF No. 227-3.)

**A. Amount of Attorney's Fees**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This calculation yields a "presumptively reasonable fee," also referred to as the "lodestar." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citations and internal quotation marks omitted). The lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543 (2010) (internal quotation marks and citation omitted). "Because attorney's fees are dependent on the unique facts of each

case, the resolution" of this issue of the amount of fees "is committed to the discretion of the district court." O.R. v. New York City Dep't of Educ., 340 F. Supp. 3d 357, 367 (S.D.N.Y. 2018) (internal quotation marks omitted). In exercising its discretion in determining appropriate fees, a court considers its familiarity and involvement with the case, its experience generally, and the evidentiary submissions and arguments of the parties. Id. (citation and internal quotation marks omitted).

### 1. Reasonable Hourly Rate

In determining whether a fee applicant's hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." O.R. v. New York City Dep't of Educ., 340 F. Supp. 3d 357, 367 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

Previously in the course of this litigation, the Court has found that $375/hour is a reasonable rate for Bender. (See ECF No. 189 at 5-6.) The Court sees no reason to depart from that finding at this time. Accordingly, the Court approves $375 as a reasonable hourly rate for Bender for his work bringing the Motions.

### 2. Reasonable Number of Hours Expended

In evaluating the reasonableness of hours expended, courts consider "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433–34.

Here, the number of hours expended on the Motions—54.65— is reasonable. Bender's contemporaneous timesheets are sufficiently detailed, easy to read, and free of indications of unnecessary or duplicative work. Accordingly, multiplying the reasonable hourly rate by the number of hours reasonably expended on the Motions, the Court determines that $20,493.75 in attorney's fees pursuant to the Court's September 10, 2019 Order is appropriate.

### B. Costs

Plaintiff does not submit any information about or proof of costs associated with filing the Motions and does not include a calculation of costs requested in the present application for fees.

## II.   Bender's Motion to Fix an Attorneys' Charging Lien

Bender argues he is entitled to a charging lien of "the fair value of his services" attaching to: (1) the balance ($13,212.32) of the attorneys' fees and expenses awarded by the Court on April 5, 2019 (ECF No. 189); (2) any attorney's fees and expenses awarded as a result of the Court's September 10, 2019 Order; and (3) any amounts awarded to Plaintiff as a result of her causes of actions and claims against Defendant in this action or in the "Trinidad action." (See Bender Decl., ¶¶ 16-17, 20; ECF No. 227 at 2.)

### A.  Entitlement to a Charging Lien

New York law "governs attorney's charging liens in federal courts sitting in New York." Itar-Tass Russian News Agency v. Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (collecting cases). "The prerequisites to the creation of a charging lien are well-settled; as a result of the attorney's efforts, (1) the client must assert a claim, (2) which can result in proceeds (3) payable to or for the benefit of the client." DeCastro v. Kavadia, 12-cv-1386 (JMF), 2018 WL 4771528, at *3 (S.D.N.Y. Oct. 3, 2018) (quoting In re Schick, 215 B.R. 13, 15 (Bankr. S.D.N.Y.

1997)). Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services. See N.Y. Judiciary Law § 475. Specifically, Section 475 provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475.

An attorney who terminates his or her representation may still enforce a charging lien to which the attorney is entitled, so long as the withdrawal is not without cause. See Melnick v. Press, 06-cv-6686 (JFB)(ARL), 2009 WL 2824586, at *2 (E.D.N.Y. Aug. 28, 2009) (collecting cases). The non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4. See Genao v. City of New York, 14-cv-8122 (AT)(JLC), 2017 WL 57886, at *2 (S.D.N.Y. Jan. 4, 2017) ("Although there does not appear to be a clear standard for what may be considered a satisfactory reason for allowing a withdrawal, it is firmly established that non-payment of legal fees is such a reason under Local Civil Rule 1.4." (internal quotation marks omitted)). Bender moved to withdraw his representation on that basis and the Court granted the motion. (See ECF No. 226.)

Plaintiff initially objected to Bender's motion to withdraw, disputing both the terms of the retainer agreement and the amount of attorney's fees she owed under the arrangement. (See ECF Nos. 208, 209.[1]) Plaintiff later withdrew that opposition. (See ECF No. 226 at 1.) Plaintiff

---

[1] The Court conditionally granted Plaintiff the right to file her opposition to Bender's motion to withdraw under seal because her opposition papers contained privileged materials.

did not write separately to oppose Bender's request for a charging lien and a retaining lien, which Bender reasserted upon the Court's decision on a different motion. (See ECF No. 250). After careful review of the record, including the billing invoices Bender submitted for review, the Court finds that Bender is entitled to a charging lien for the reasonable value of the services rendered on Plaintiff's behalf. See, e.g., Winkfield v. Kirschenbaum & Phillips, P.C., 12-cv-7424 (JMF), 2013 WL 371673, at *3 (S.D.N.Y. Jan. 29, 2013).

**B. Amount of Charging Lien**

The charging lien should be fixed at the "the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*." Stair v. Calhoun, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010). Specifically, in assessing the amount of a charging lien on a *quantum meruit* basis, a court should consider: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained (to the extent known)." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998); see also Antonmarchi v. Consol. Edison Co., 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010). After considering the factors relevant to a *quantum meruit* fee analysis, it is appropriate for the court to "turn[] to lodestar analysis to reach a specific dollar figure for the value of the services rendered." Sequa Corp., 156 F.3d at 148. "[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court," id. at 149 (citation omitted), and the Court of Appeals has instructed that "[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair,'" Sutton v. N.Y. City Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted). When

assessing the fair value of services rendered, a court may look to the terms of the governing retainer agreement and the agreed-upon rate of compensation, although it is not bound by those terms. See Stair, 722 F. Supp. 2d at 269.

Bender argues that the charging lien should be valued at the full amount of his services rendered, calculated according to his normal billable rate, less any payments received to date. Bender calculates this amount at $166,198.50, by taking the number of hours worked (563.6), multiplying his normal hourly billing rate ($375), and subtracting payments received to date ($39,651.50 from Plaintiff and $5,500.00 from Defendant). (See Bender Decl., ¶¶ 16-17, 20; ECF Nos. 227-1, 227-2.) Under the circumstances of this case, the requested amount of the charging lien is reasonable subject to a minor downward modification based on Bender's billing practices.

Here, a retainer agreement between Plaintiff and Bender provides a mixed hourly rate and contingency fee arrangement. The retainer agreement provided for a 15% contingency fee, capped at $350,000, and a discounted hourly fee of $125.00 for services rendered through the conclusion of the case.[2] Bender claims that the $125/hour rate accounts for the contingency fee, and the rate of the contingency fee itself contemplates an hourly fee paid throughout the litigation. Bender now contends that the value of his services for the purposes of assessing a charging lien should be set at his normal hourly rate, $375/hour. The Court agrees that $375/hour is a reasonable rate in light of counsel's experience and credentials. (See ECF No. 189 at 5–6 (reviewing Bender's qualifications and finding $375/hour a reasonable rate).) The Court also agrees that the total amount sought—nearly $170,000—is reasonable and fair given the mixed contingency and hourly arrangement negotiated between Bender and Plaintiff.

---

[2] See Reply Declaration of Howard Bender in Support of Motion to Withdraw as Counsel at n.3, filed under seal.

Bender's timesheets suffer two infirmities justifying a downward adjustment to the value of services rendered, however. First, Bender's timesheets include block-billing. The practice of block-billing, while not prohibited, is disfavored because it can make it "difficult for the Court to evaluate whether time spent on a given task was excessive where the attorney has grouped different tasks together in a single time entry." Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 10-cv-5256 (KMW)(DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (citations omitted). Consequently, and as Bender himself notes, courts often reduce fees on account of block-billing. See id. (collecting cases). Here, the use of block-billing, while not extreme, does limit the Court's ability to adequately assess Bender's overall efficiency and whether the time dedicated to this case was reasonable.

Second, the timesheets are vague to the extent most entries of email and letter correspondence lack detail about their subject matter (*e.g.*, entries denoting "emails to/from . . ." or "call with . . ." are not followed by "*re:*" descriptions). "Courts may reduce an attorney's requested fees when the billing entries are vague and do not sufficiently demonstrate what counsel did." Held & Hines LLP v. Hussain, 16-cv-05273 (JSR)(SN), 2019 WL 5722128, at *6 (S.D.N.Y. Aug. 7, 2019), report and rec. adopted as modified, 2019 WL 4727465 (Sept. 27, 2019). These vague entries hinder the Court's ability to review the timesheets for reasonableness.

Nonetheless, given the Court's familiarity with this extensive litigation, and upon further consideration of the docket, I find that Bender's timesheets are generally reasonable. I conclude that due to the use of block-billing and the inclusion of a number of vague entries, an across-the-board reduction of 10% to the charging lien is justified. See id. at *8 (citation omitted) (applying an across-the-board reduction to fees sought and noting that courts may apply such reductions when billing records are not sufficiently detailed, contain inappropriate block billing, or both).

Finally, Bender claims 6.9 hours worked in June 2019, but only submits contemporaneous timesheets reflecting 4.7 hours billed for that month,[3] warranting a reduction to the overall amount of fees sought by 2.2 hours times $375, or $825.00. For these reasons, the Court GRANTS a charging lien in the amount of $148,753.65.

**C. Proceeds to Which the Charging Lien Will Attach**

Bender argues he is entitled to a charging lien upon any of Plaintiff's proceeds from this case as well as any of Plaintiff's proceeds as a result of the Trinidad Action. (See ECF No. 227 at 1-2.)

A charging lien will attach to any "verdict, report, determination, decision, award, settlement, judgment or final order" rendered in Plaintiff's favor, if Plaintiff ultimately achieves a favorable result. See N.Y. Judiciary Law § 475. An attorney is only entitled to a charging lien where "there has been an appearance by that attorney in the action which creates or is the source of funds against which the lien is asserted." Chevron Corp. v. Donziger, 11-cv-0691 (LAK), 2011 WL 2150450, at *3 (S.D.N.Y. May 31, 2011) (internal quotation marks omitted).

Bender, who has never represented Plaintiff in the Trinidad Action, is correct to note that under very specific circumstances, courts may grant charging liens on proceeds in actions where the moving attorney did not render legal services but where a subsequent action "in logical sequence" involved the same claims. See Sellick v. Consol. Edison Co. of New York, Inc., 15-cv-9082 (RJS), 2017 WL 1133443, at *5 (S.D.N.Y. Mar. 23, 2017) (granting charging lien for attorney of record in proceedings before the Equal Employment Opportunity Commission on

---

[3] This gap is likely explained by the fact that Bender submitted partial June 2019 timesheets with his motion to withdraw filed June 26, 2019. Upon updating the briefing to reflect amounts due through September 2019, Bender relied on his previous submission for the month of June 2019 and did not provide additional records for June 2019 reflecting the hours claimed in his summary of hours billed each month from June through September 2019 (ECF No. 227-2).

proceeds gained as a result of subsequently filed federal suit on same cause of action); Mason v. City of New York, 12-cv-5885 (PKC), 2016 WL 2766652, at *3 (S.D.N.Y. May 12, 2016) (concluding that the attorney of record on case which was voluntarily withdrawn without prejudice and later re-filed by new counsel was entitled to a charging lien on the proceeds of the second action because both lawsuits "[arose] from the same events and allege[d] nearly identical claims"); Cohen v. Grainger, Tesoriero & Bell, 81 N.Y.2d 655, 657 (1993) (permitting an attorney to assert a charging lien where the attorney was discharged after representing a plaintiff in state court who hired new attorneys to file an action on the same claim in federal court).

This situation differs from those limited cases. While Bender has established his entitlement to a charging lien upon Plaintiff's proceeds resulting from this action, Bender has not shown that the Trinidad Action was initiated in the "logical sequence" from the work he performed here. Although the underlying facts are related, the Trinidad Action is against different defendants and alleges claims under different laws. And, significantly, it was filed by Plaintiff *pro se*, before Bender appeared in this action. As Bender has not appeared as counsel in the Trinidad action and cannot establish that the Trinidad Action follows in logical sequence from the federal action, he is not entitled to a charging lien on any proceeds as a result thereof. See Galvez v. Aspen Corp., 967 F. Supp. 2d 615, 627 (E.D.N.Y. 2013) (reading the "unambiguous language of Section 475" to mean that a charging lien "attaches to the client's cause of action" (emphasis in original) and declining to award a charging lien to attorneys on proceeds from related case where they had not appeared); Donziger, 2011 WL 2150450, at *3 (internal quotation marks omitted) (holding that attorney of record in federal case which was dismissed and transferred to Ecuador could not assert charging lien over Ecuadorian action because the attorney had not appeared in the Ecuadorian action).

For these reasons, the charging lien shall attach to any proceeds Plaintiff obtains as a result of this action, including (1) any attorney's fees and expenses awarded by the Court[4] and (2) any other amounts awarded to Plaintiff as a result of her causes of actions and claims against Defendant in this action.

### III. Bender's Motion to Fix a Retaining Lien

Bender also requests a retaining lien in the amount of the unpaid billable portion of his fee as of June 29, 2019: $26,098.85. (See Bender Decl., ¶ 19.)

**A. Entitlement to a Retaining Lien**

Under New York law, a retaining lien entitles a discharged attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause. See Melnick, 2009 WL 2824586, at *2 (citing Resolution Tr. Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)). "Generally, the Court should determine the amount of the retaining lien and the client should remit this amount before the attorney is required to provide the file to the client." Melnick, 2009 WL 2824586, at *2. Retaining liens and charging liens are cumulative—not exclusive—methods of recovery for attorneys who withdraw for good cause. See, e.g., id. (citing Levy v. Laing, 843 N.Y.S.2d 542 (1st Dep't Sept. 18, 2007)). As discussed above, Bender's motion to withdraw was granted based on Plaintiff's non-payment of fees, a valid ground for withdrawal supporting a retaining lien. Accordingly, Bender is entitled to a retaining lien.

---

[4] Including, but not limited to, any amounts paid to date by Defendant to Plaintiff in satisfaction of the Court's March 16, 2020 Order and any amounts awarded by the Court's September 10, 2019 Order (the amount determined herein).

### B. Amount of the Retaining Lien

"A retaining lien remains in force until the client's account is paid in full." Melnick, 2009 WL 2824586, at *11 (citing Theroux v. Theroux, 536 N.Y.S.2d 151 (2d Dep't Dec. 30, 1988)). Here, Bender requests a retaining lien in the amount of $26,098.50, the amount Plaintiff continues to owe under the mixed hourly fee-contingency arrangement. Plaintiff does not object to this amount. Therefore, a retaining lien shall be granted at the amount of $26,098.50. This retaining lien shall run concurrently with the charging lien, *i.e.*, the first $26,098.50 subject to Bender's charging lien will also be subject to Bender's retaining lien and no lien will attach to proceeds beyond the total amount of the charging lien established by this Order.

## CONCLUSION

For the reasons set forth above, the Court determines the amount of attorney's fees owed pursuant to the Court's September 10, 2019 Order is $20,493.75.

The Court also assesses a charging lien against Plaintiff in the amount of $148,753.65 and a retaining lien against Plaintiff in the amount of $26,098.50 that shall attach to any proceeds, including attorney's fees and expenses, Plaintiff obtains as a result of this action.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   April 27, 2020
         New York, New York