UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JENNY RAMGOOLIE,

                                        Plaintiff,

                    -against-

ANDY RAMGOOLIE,

                                        Defendant.

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 11/24/2021 __

16-CV-03345 (VEC) (SN)

REPORT AND
RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE VALERIE CAPRONI:

        This long-litigated case concerns a dispute between Jenny and Andy Ramgoolie, a

brother and sister who decided to go into business together. On September 10, 2019, the Court

entered a default against Andy Ramgoolie and referred the matter to my docket to conduct an

inquest on damages. Because Plaintiff Jenny Ramgoolie has established a sufficient basis on

which to award damages, I recommend she be awarded $398,380 Trinidad and Tobago Dollars,

plus pre-judgment interest.

## BACKGROUND

I.        Procedural Background

        The Court assumes the parties' familiarity with the procedural history in this case. See

Ramgoolie v. Ramgoolie, 333 F.R.D. 30 (S.D.N.Y. 2019). Accordingly, only a brief summary of

the proceedings is recounted below.

        Jenny Ramgoolie initiated this suit against numerous Defendants in 2016 for breach of

contract and other state law claims. Id. at 32; ECF No. 1 ("Compl."). Andy Ramgoolie, her

brother, is the only remaining Defendant after the Court dismissed the other Defendants for lack of personal jurisdiction. <u>Ramgoolie</u>, 333 F.R.D. at 32; ECF No. 149 at 1.[1]

The parties engaged in contentious discovery on liability, during which Defendant failed to produce numerous requested documents. ECF No. 149 at 4. In February 2018, Plaintiff and Defendant Andy Ramgoolie cross-moved for summary judgment, and Plaintiff additionally moved for sanctions pursuant to Federal Rule of Civil Procedure 37. <u>Id.</u> at 1–2; <u>see</u> ECF No. 113. The Court denied the parties' cross motions for summary judgment and ordered Defendant to bear Plaintiff's reasonable attorney's fees and costs related to her motion to compel and motion for sanctions. <u>Id.</u> at 20–21, 27.

In January 2019, I ordered Defendant to produce bank and financial records relating to AANDCO, the business Andy and Jenny Ramgoolie allegedly established, after he produced incomplete discovery. ECF No. 181. I also determined that Defendant was, at least, "affiliated" with Direct Med, a Trinidadian medical-supply company that sold supplies to KDR, the company that took over AANDCO. <u>Id.</u> A month later, Plaintiff moved for sanctions against Defendant based on his failure to comply with the January 2019 Order. ECF Nos. 182–83.

On April 5, 2019, the Court granted Plaintiff's request for attorney's fees and costs incurred in connection with her prior motion to compel and motion for sanctions. ECF No. 189. On July 1, 2019, Plaintiff moved for a finding of civil contempt against Defendant on account of his failure to pay the amount specified in the April 5, 2019 Order. ECF No. 199. Defendant opposed that motion. ECF Nos. 210–11.

---

[1] On February 10, 2017, the Court dismissed Defendants AANDCO and KDR for lack of personal jurisdiction. <u>See</u> ECF No. 67. On August 8, 2017, the Court dismissed Defendants Jeremy, Kevin, and Annie Ramgoolie, also for lack of personal jurisdiction. ECF No. 88.

On September 10, 2019, the Court entered a default against Defendant Andy Ramgoolie. 333 F.R.D. at 33 (ECF No. 216). The Court also granted Plaintiff's motion for sanctions and ordered Defendant to pay Plaintiff's attorney's fees and costs associated with Plaintiff's motion for sanctions and November 26, 2018 motion to compel. Id. at 31. Judge Caproni referred the matter to me for an inquest on damages. See ECF No. 217.

On October 7, 2019, the Court granted Howard Bender's motion to withdraw as Plaintiff's counsel. ECF No. 226. The Court subsequently awarded Howard Bender attorney's fees for costs incurred in preparing a successful contempt motion against Defendant on March 16, 2020. ECF No. 254. On September 2, 2020, the Court ordered Defendant to pay Mr. Bender $6,450.00 in attorney's fees and costs incurred in bringing the contempt motion. ECF No. 300.

On December 6, 2019, Defendant Andy Ramgoolie filed a motion for reconsideration of the September 10, 2019 Order entering a default against him. ECF Nos. 232–36.

On February 25, 2020, I recommended holding Defendant in civil contempt for his failure to pay Plaintiff's attorney's fees and costs incurred bringing a motion to compel and motion for sanctions. ECF No. 241.

On April 27, 2020, the Court awarded Plaintiff's former counsel, Howard Bender, a charging lien and a retaining lien following withdrawal as Plaintiff's counsel. See ECF No. 262. Plaintiff, *pro se*, and Mr. Bender each moved the Court to reconsider its April 27, 2020 Order. ECF Nos. 263, 267. On October 16, 2020, the Court denied both motions. Ramgoolie, No. 16-cv-03345 (VEC) (SN), 2020 WL 6135056, at *1 (S.D.N.Y. Oct. 16, 2020) (ECF No. 302).

On August 14, 2020, Defendant filed his response to Plaintiff's proposed findings of fact and conclusions of law. See generally ECF No. 297.

On September 17, 2020, the Court denied Plaintiff's motion to amend her complaint to add Direct Med as a defendant. <u>Ramgoolie</u>, No. 16-cv-03345 (VEC) (SN), 2020 WL 8838047, at *1 (S.D.N.Y. Sept. 17, 2020) (ECF No. 301). The Court now considers Plaintiff's damages.

## DISCUSSION

### I.    Legal Standard

Because a default has been entered against Defendant under Federal Rule of Civil Procedure 37, the Court follows Rule 55. <u>See</u> <u>Kuruwa v. Meyers</u>, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), <u>aff'd</u>, 512 F. App'x 45 (2d Cir. 2013). The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in <u>City of New York v. Mickalis Pawn Shop, LLC</u>:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." <u>Vt. Teddy Bear Co. v. 1–800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. <u>New York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. <u>See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.</u>, 109 F.3d 105, 108 (2d Cir. 1997) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992)). "Even after the default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit mere conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up). Where a plaintiff's well-pleaded facts state a claim on which relief can be granted, the only remaining issue in an inquest is if the plaintiff has provided adequate support for the requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim th[r]ough the submission of evidence . . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount a plaintiff is entitled to recover without holding a hearing so long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (first citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, then citing Transatlantic Marine Claims Agency Inc., 109 F.3d at 111). In general, "the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party" where he or she "has committed a wrong which renders impossible the exact ascertainment of damages." President & Dir. of Manhattan Co. v. Kelby, 147 F.2d 465, 476 (2d Cir. 1944) (quoting Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 563 (1931)). However, defendant's wrongdoing does not relieve the plaintiff of her obligation to show, "at the very least, a reasonable inference of damages." Fed. Ins. Co. v. Mertz, No. 12-cv-1597-NSR-JCM, 2016 WL 164618, at *4 (S.D.N.Y. Jan. 12, 2016) (citing Matter of Rothko's Est., 43 N.Y.2d 305, 323 (1977)).

## II.  Facts Related to Liability

The following facts are established by the admissible evidence submitted for this inquest and the allegations in the Complaint, which are deemed admitted except to the extent they concern the amount of damages. See Greyhound, 973 F.2d at 158.

According to Plaintiff, in July 2010, she and Defendant Andy Ramgoolie orally agreed to open a dialysis center in Trinidad and Tobago. Compl. at ¶¶ 1, 34–35; ECF No. 274 (Pl's Proposed Findings of Fact and Conclusions of Law, hereinafter, "FFCL").[2] Specifically, Plaintiff asserts she and Defendant agreed that Defendant would "pay the start-up costs," and she would conduct research, file the appropriate permit paperwork, design the center, source the necessary equipment, set up the supply chains, and develop the company's "internal operations procedures and paperwork." Id. at ¶¶ 1, 36. Plaintiff asserts that they further agreed that after the dialysis center opened, Defendant would be reimbursed, she would run the center as "Director of Clinical Operations," and Plaintiff and Defendant would each own half of the venture, and profits and losses would be shared equally. Id. at ¶ 1. Defendant has continually denied that there was any such agreement. See Ramgoolie, 333 F.R.D. at 32; ECF No. 297 at 5. Plaintiff conducted her research for the dialysis clinic from July 2010 to December 2012. Id. at ¶ 37. She submitted a business plan to Defendant in May 2012, and in December 2012, she emailed Defendant and reminded him of their "50/50 business deal." Id. at ¶¶ 38–39. Defendant did not respond in writing. Id. at ¶ 40.

In 2013, Plaintiff asserts that she and Defendant agreed to keep her name off the corporate paperwork for the dialysis center, AANDCO Health Care Ltd. ("AANDCO"). Compl. at ¶¶ 3, 4. Plaintiff's son was involved in a court case that Plaintiff and Defendant were worried would negatively impact the way the company was perceived by Trinidadian authorities. Id.

---

[2] The paragraph numbers refer to Plaintiff's pro se complaint, beginning on page 6 at ECF No. 1.

Plaintiff maintains they agreed that her name would be added to the paperwork "after the resolution of [the] family crisis." Id. at 3. Thus, in April 2013, AANDCO was incorporated in Trinidad and Tobago with Kevin Ramgoolie, Plaintiff's and Defendant's nephew, listed as director and receiving a monthly salary. Id. at ¶¶ 41, 43. The corporate filings list Kevin and Defendant as corporate directors. Id. at ¶ 44. Plaintiff alleges that, unbeknownst to her, Kevin later amended the corporate paperwork for AANDCO to reflect Jeremy Ramgoolie, his brother and Plaintiff and Defendants' nephew, as another corporate director. Id. at ¶ 46. A June 30, 2014 Annual Return of a Company for Profit for AANDCO reflected Defendant and Kevin as the company's sole shareholders with one share apiece. Id. at ¶ 48.

AANDCO opened in July 2014, with Plaintiff as the Director of Clinical Operations. Id. at ¶ 5. Plaintiff asserts that soon after AANDCO opened, she had to use her own funds to pay AANDCO's bills. Id. at ¶ 6.

The case involving Plaintiff's son was resolved in December 2014, and sometime thereafter, Plaintiff asked Defendant to file the corporate paperwork that would reflect her status as shareholder and director of AANDCO. Id. at ¶¶ 7–8. On several occasions, Plaintiff asked Defendant to give her 50 percent of AANDCO's shares, and pay her for (1) her work as Director of Clinical Operations of AANDCO, (2) 50 percent of AANCO's profits, (3) her time, effort, and research into the business, and (4) reimburse her for the personal funds she expended on behalf of the company. Id. at ¶¶ 9, 53–65. Plaintiff calculated her out-of-pocket expenditures to total 78,534 Trinidad and Tobago Dollars (or, at Plaintiff's estimate, $13,000 U.S. Dollars). Id. at ¶ 65. Defendant repeatedly confirmed that the money would be paid. Id. at ¶¶ 66, 69 .

Plaintiff later learned that Defendant never filed the supplemental corporate paperwork reflecting her status as director and a 50 percent shareholder of AANDCO. Id. at ¶ 10. In April

2015, Defendant, as well as Kevin and Jeremy, were listed as AANDCO's shareholders with one share apiece. Id. at ¶ 67. By August 2015, Defendant, Kevin, Jeremy and Annie, Plaintiff's and Defendant's mother, were listed as AANDCO's shareholders. Id. at ¶¶ 11, 76. At that time, Defendant held 600 shares, Kevin held 2,900 shares, Jeremy held 2,000 shares, and Annie held 4,500 shares. Id. at ¶ 76. Around August 2015, Plaintiff also learned that Defendant terminated her access to the AANDCO bank account and told AANCO staff that she no longer worked at the company. Id. at ¶¶ 12, 78.

In January 2016, Kevin Ramgoolie registered KDR Medical Care Ltd. ("KDR") as a business at AANDCO's address, and Kevin and Jeremy Ramgoolie were listed as corporate directors. Id. at ¶¶ 88–92. Plaintiff believes that KDR was created to prevent her from benefitting from the original agreement between her and Defendant. Ramgoolie, 333 F.R.D. at 32.

Plaintiff brought this case in 2016 in order to recover her 50 percent ownership of AANDCO, 50 percent of AANCO's profits, her job as Director of Clinical Operations of AANDCO, backpay for her work as Director of Clinical Operations, 50 percent of all assets of AANCO, fees for her time, effort, and research beginning in July 2010, reimbursement of her own monetary investment, and punitive damages. Id. at 13.

## III.   Damages

Plaintiff's complaint contains multiple causes of action against Defendant Andy Ramgoolie, including breach of contract, quantum meruit, unjust enrichment, constructive trust, constructive fraud, breach of fiduciary duty, fraudulent conveyance, and intentional infliction of emotional distress. See generally Compl. Plaintiff requests that she be granted $500,000 as payment for her time and effort spent researching for AANDCO both before and after it opened; $780,000 in backpay, reflecting a salary of $10,000 per month for the 78 months she worked as

the Director of Clinical Operations for AANDCO; $12,872 as reimbursement for her out-of-pocket expenses spent on AANDCO; return to her position as Director of Clinical Operations at the Dialysis Center; a constructive trust; attorney's fees and costs; and prejudgment interest.[3] ECF No. 274 at ¶¶ 51–54, 68–74 (Pl's FFCL).

## A.  Breach of Contract

"To prevail on a breach of contract claim under New York law, a plaintiff must prove '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir. 2000) (quoting First Invs. Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)). The Court applies New York state law because it sits in diversity. Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994) ("A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues."). In order to establish the existence of a contract under New York law, a plaintiff must establish an offer, acceptance, consideration, mutual assent, and intent to be bound. Rozsa v. May Davis Grp., Inc., 152 F. Supp. 2d 526, 533 (S.D.N.Y. 2001). "[T]o create a binding contract there must be a meeting of the minds as to the essential terms of the agreement." May v. Wilcox, 182 A.D.2d 939, 940 (3rd Dep't 1992); see also Oscar Prods., Inc. v. Zacharius, 893 F. Supp. 250, 255 n.3 (S.D.N.Y. 1995)

Oral contracts are permitted under New York law. Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir. 1997) (citing Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985)). Yet "an oral agreement is not enforceable unless there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all

---

[3] Plaintiff lists four claims raised in the Complaint in her Proposed Findings of Fact and Conclusions of Law without factual or legal support, and so this Report & Recommendation does not address them and deems them abandoned. ECF No. 274 at ¶ 91 (Pl's FFCL).

material terms." <u>Anderson v. Greene</u>, 774 F. App'x 694, 697 (2d Cir. 2019) (quoting <u>Kelly v. Bensen</u>, 151 A.D.3d 1312, 1313 (3d Dep't 2017)). In considering whether parties intended to be bound by an oral contract, courts in this Circuit consider: "(1) whether a party expressly required the agreement be in writing to be enforceable; (2) partial performance of the contract; (3) whether the parties agreed to all of the alleged contract terms; and (4) whether the agreement at issue is the type of contract that is usually written." <u>Optionality Consulting Pte. Ltd. v. Nekos</u>, No. 18-cv-05393 (ALC), 2019 WL 4523469, at *4 (S.D.N.Y. Sept. 18, 2019) (citing <u>Anderson</u>, 774 F. App'x at 697).

Finally, under New York law,

> [a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

<u>Jemzura v. Jemzura</u>, 36 N.Y.2d 496, 503–04 (1975) (internal citations omitted).

Throughout the course of this litigation, the Court has noted that Plaintiff has failed to produce a "single contract or unambiguous statement of her rights and responsibilities." <u>See</u> <u>Ramgoolie v. Ramgoolie</u>, No. 16-cv-03345 (VEC) (SN), 2016 WL 11281385, at *7 (S.D.N.Y. Dec. 20, 2016), <u>report and recommendation adopted</u>, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017). In support of her request for damages, Plaintiff again submits a December 5, 2012 email that she sent to Defendant in which she states "50/50 business deal, you get paid back your cash out put with interest [] and divide profit." ECF No. 271, Ex. 1. Defendant has also repeatedly contested the existence and terms of any agreement between the parties. <u>See, e.g.</u>, ECF No. 297 at 5.

At this posture, however, taking the allegations in the Complaint as true and considering Plaintiff's *pro se* status, Plaintiff has plausibly alleged the existence of a contract implied-in-fact in which she and Defendant agreed to open a dialysis center in Trinidad, with the profits split between the two parties 50/50, and with Plaintiff doing the initial research and working as the "Director of Clinical Operations," and Defendant paying the start-up costs. See Compl. at ¶¶ 1, 34–36.

The challenge, however, is the calculation of Plaintiff's damages. At this stage, following a default, the amount of damages must be established with reasonable certainty. See Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) ("In an action for breach of contract, a plaintiff is entitled to recover lost profits only if he can establish both the existence and the amount of such damages with reasonable certainty.") (citing Kenford Co. v. Erie Cty., 67 N.Y.2d 257, 261 (1986)). Typically, "a successful plaintiff in a breach of contract action is entitled to damages in the 'amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.'" Kuruwa, 823 F. Supp. 2d at 259 (quoting Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995)).

First, Plaintiff alleges she is owed $500,000 for the "extensive research" she conducted before and after the dialysis center opened, from 2010 to 2014. It is unclear whether Plaintiff asserts these damages under her breach of contract or quasi-contract claims. Plaintiff bases her claim on her estimation that "qualified healthcare personnel" earn up to $1,000 per hour. Although she provides a detailed list of tasks describing her work for AANDCO, she does not produce any documentation—or even an estimate—of her total hours worked. Ex. 12. Because Plaintiff does not offer any foundation for her assertion that $1,000 is an appropriate hourly rate or evidence of the number of hours worked, on this record, the Court cannot conclude that those

damages are established with reasonable certainty. See Schonfeld, 218 F. 3d at 172. However, because Plaintiff represents that she can provide documents to substantiate her claims, she is granted leave to submit this evidence along with any objections to this Report & Recommendation. ECF No. 274 at ¶ 51 (Pl's FFCL).

Second, Plaintiff alleges she is owed $780,000, which constitutes her salary for her work as the Director of Clinical Operations. Once again, however, Plaintiff does not provide any evidence to support her assertion that her contemplated or expected salary was $10,000 U.S.D. a month. Instead, she broadly refers to "comparable salaries" available online, all of which are for positions in the New York City metropolitan area. See ECF No. 271, Ex. 8. Plaintiff has therefore failed to sufficiently prove her damages with regards to her salary with reasonable certainty.

Third, Plaintiff asserts that under the agreement with Defendant, she was entitled to half of the dialysis center's profits. To determine what exactly AANDCO's profits were is an impossible task, as the company's financial records are incomplete. Plaintiff supports her calculations by submitting the analysis of Shanaz Sukhdeo, a Trinidadian Qualified Accountant who computed AANDCO's net profits from 2014-2016. See ECF No. 271, Ex. 7. It appears that Sukhdeo reverse-engineered AANDCO's (and KDR's) profits by reviewing the invoices identifying how much the Trinidadian Ministry of Health paid AANDCO for dialysis patients, ECF No. 271, Ex. 14, copies of checks paid to AANDCO by the Trinidadian government, ECF No. 271, Ex. 3, and by seemingly estimating certain fixed and variable costs. While the Court is sympathetic to the position Plaintiff is in, given her lack of access to AANDCO's records, Sukhdeo's unsupported calculations do not, by themselves, establish Plaintiff's breach of contract damages with reasonable certainty. See Schonfeld, 218 F.3d at 172; see also Fed. Ins.

Co., 2016 WL 164618, at * 4 (holding that despite defendant's fraudulent inflation of insurance claims, plaintiffs were not entitled to a full reimbursement of payments without accounting for repair work actually performed by defendants); cf. Matter of Rothko's Est., 43 N.Y.2d. at 322-23 (upholding surrogate's calculation of damages based on expert's appraisal and sale prices for other artworks as a "reasonable basis of computation" that was "not merely speculative, possible or imaginary").

Finally, Plaintiff asserts she is owed 50 percent of AANDCO's shares. ECF No. 274 at ¶ 5 (Pl's FFCL). Plaintiff again provides little to support any calculations; she submits AANDCO's 2017 annual return of a company for profit, which indicates that the company had 10,000 shares, valued at $1 per share. See ECF No. 271, Ex. 11. The return also shows that AANDCO carried $150,000 in debt, which exceeds the value of the shares. Id. The Court is again left without any basis by which to calculate Plaintiff's damages regarding any shares she might be owed. Nevertheless, Plaintiff has provided one concrete figure with documentation: in an agreement dated January 15, 2016, AANDCO was purchased by KDR Medical Care Ltd. for $796,760 Trinidad and Tobago Dollars ("TTD"). See ECF No. 271, Ex. 19. As a 50 percent owner of AANDCO, Plaintiff is entitled to half those proceeds as lost profits that she would have earned had Defendant fulfilled the terms of the contract. Accordingly, the Court recommends that Plaintiff be awarded $398,380 TTD, to be converted to United States Dollars at the appropriate exchange rate. See N.Y. Judiciary Law § 27(b) ("In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation. Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.").

### B. Quantum Meruit and Unjust Enrichment

Plaintiff has also brought claims of quantum meruit and unjust enrichment against Defendant. See Compl. at ¶¶ 112–20, 130–32. Under New York law, Courts are to analyze quantum meruit and unjust enrichment claims together as a single quasi-contract claim. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). To establish a quantum meruit claim, a plaintiff "must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Scott v. Rosenthal, 53 F. App'x 137, 140 (2d Cir. 2002) (quoting Martin H. Bauman Assoc. v. H & M Int'l Transp., Inc., 171 A.D.2d 479, 484 (1st Dep't 1991)); see also Mid-Hudson Catskill, 418 F.3d at 175. To recover under an unjust enrichment claim, a plaintiff must show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 69 (2d Cir. 2018) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)).

Critically, quantum meruit and unjust enrichment are both quasi-contract claims, arising "in the absence of any agreement." Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (2005). "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Mid-Hudson Catskill, 418 F.3d at 175 ("Having successfully brought a breach-of-contract claim based on defendant's failure to compensate it for the services it provided, plaintiff may not recover a second time through quantum meruit.") (citing Clark–Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)).

Plaintiff's quantum meruit and unjust enrichment claims against Defendant stem from the same conduct that she alleges was the basis of their agreement. See Compl. ¶¶ 120, 132; ECF No. 274 at ¶¶ 60–67 (Pl's FFCL). Because Plaintiff has adequately pleaded the existence of a contract and is awarded damages on that claim, she cannot doubly-recover under claims for quantum meruit and unjust enrichment for the same conduct. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586–88 (2d Cir. 2006).

The Court would not recommend any award of damages on the quasi-contract claims even if the Court were to construe Plaintiff's complaint as alleging that certain conduct that took place after she and Defendant entered into the agreement in July 2010 was not covered by the agreement. See, e.g., Compl. ¶ 113. Plaintiff asserts she furnished the "work, labor, and services" after she and Defendant entered into their agreement in July 2010 and refers to a Time Warner Cable telephone bill for her mother, Annie Ramgoolie, a receipt for $80.98 spent at LJ Shipping HUB in South Ozone Park, New York, and a receipt of a bank transfer in the amount of $1,160, paid to a Nazudeen Mohammed. Ex. 9. These items do not support Plaintiff's claim for repayment of $12,872 that she paid "out-of-pocket." No. 274 at ¶ 54 (Pl's FFCL).

I therefore recommend that Plaintiff not be awarded damages under her claims of quantum meruit and unjust enrichment.

## C.    Constructive Trust

New York law requires that four elements be met to impose a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004). "The fourth element is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'" Id., quoting Simonds

v. Simonds, 45 N.Y.2d 233, 242 (1978). As explained above, unjust enrichment is a quasi-contractual claim arising in the absence of an enforceable agreement, and hence parties are precluded from recovering under a theory of unjust enrichment where there is a valid and enforceable contract. See Beth Israel Med. Ctr., 448 F.3d at 587. The Court of Appeals has held that "the principles that apply to quasi-contractual remedies also apply to constructive trusts," and so constructive trusts claims are similarly precluded by the existence of a contract. In re First Cent. Fin. Corp., 377 F.3d at 213–214.

Like her quantum meruit and unjust enrichment claim, Plaintiff's constructive trust claim are based upon the same factual allegations as her breach of contract claim. ECF No. 274 at ¶¶ 68–74 (Pl's FFCL). Because this claim "arises from the same operative facts as [the] plaintiffs' contract breach claim," Plaintiff is precluded from recovery.  N. Shipping Funds I, LLC v. Icon Cap. Corp., 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (internal quotation marks omitted); see also Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502, 514–15 (S.D.N.Y. 2012). Furthermore, New York courts have held that because a constructive trust is an equitable remedy, it "should not be imposed unless it is demonstrated that a legal remedy is inadequate." Bertoni v. Catucci, 117 A.D.2d 892, 895 (3d Dep't 1986). The Court has held that Plaintiff is entitled to damages for her breach of contract claim, and so Plaintiff need not seek recourse in equity.

I therefore recommend that a constructive trust not be imposed.

### D.      Constructive Fraud

Plaintiff also raises a claim for constructive fraud.  See Compl. at ¶¶ 155–66. There are five elements of fraud under New York law: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable

reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC, No. 20-cv-731 (PAE), 2021 WL 965909 (S.D.N.Y. Mar. 15, 2021) (quoting Schlaifer Nance & Co. v. Est. of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)). "Constructive fraud requires establishing the same elements as actual fraud, 'except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties.'" E*TRADE Fin. Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009) (quoting Apace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509, 519 (W.D.N.Y. 2007)). "A fiduciary is '[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes another the duties of good faith, trust, confidence, and candor' or '[o]ne who must exercise a high standard of care in managing another's money or property." Fed. Ins. Co. v. Int'l Bus. Mach. Corp., 18 N.Y.3d 642, 648 n.3 (2012). "The mere fact that the parties are siblings, standing alone, is insufficient to support a fiduciary relationship," Castellotti v. Free, 138 A.D.3d 198, 209 (1st Dep't 2016), but "[f]amily members stand in a fiduciary relationship toward one another in a co-owned business venture." Braddock v. Braddock, 60 A.D.3d 84, 88 (1st Dep't 2009); see also Venizelos v. Oceania Mar. Agency, 268 A.D.2d 291 (1st Dep't 2000).

However, "inasmuch as '[a]cause of action sounding in fraud does not lie where a claim is based upon the same allegations as gave rise to a breach of contract cause of action," Plaintiff may not recover damages both for breach of contract and constructive fraud. Purnavel v. Tel-A-Car of New York, Inc., 204 A.D.2d 297, 297 (2d Dep't 1994); see also Hong Qin Jiang v. Lin Wan Wu, 179 A.D.3d 1035, 1039 (2d Dep't 2020) ("A cause of action sounding in fraud is duplicative of a breach of contract cause of action if it is based on identical circumstances, and does not allege that the misrepresentation resulted in any loss independent of the damages

allegedly incurred for breach of contract"); cf. Walnut Hous. Assoc. 2003 L.P. v. MCAP Walnut Hous. LLC, 136 A.D.3d 403, 405 (1st Dep't 2016) (holding that constructive fraud claim based on different allegations was not duplicative of breach of contract claim). Plaintiff's constructive fraud claim relies on the same set of allegations as her breach of contract claim, namely, that Defendant violated the terms of their agreement. ECF No. 274 at ¶¶ 75–87 (Pl's FFCL). As a result, she cannot recover damages for constructive fraud.

I therefore recommend that Plaintiff not be awarded damages under her claim of constructive fraud.

### E.    Breach of Fiduciary Duty

Plaintiff alleges that Defendant is liable for a breach of fiduciary duty. See Compl. at ¶¶ 213–19. The elements of a breach of fiduciary duty claim are: (1) that a fiduciary duty existed between the plaintiff and the defendant; (2) that the defendant breached that duty; and (3) that damages resulted from the breach. Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986).

Under New York law, breach of fiduciary duty claims "that merely duplicate contract claims must be dismissed." Bullmore v. Banc of Am. Sec. LLC, 485 F. Supp. 2d 464, 469 (S.D.N.Y. 2007). "[A] plaintiff cannot pursue a separate breach of fiduciary duty claim based on allegations of fiduciary wrongdoing that 'are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith.'" Balta v. Ayco Co., LP, 626 F. Supp. 2d 347, 360 (W.D.N.Y. 2009) (quoting Brooks v. Key Trust Co. Nat'l Assoc., 26 A.D.3d. 628, 630 (3d Dep't 2006)). To sustain a claim for breach of fiduciary duty in addition to a breach of contract claim,

18

"'a legal duty independent of the contract itself [must have] been violated.'" <u>Bullmore</u>, 485 F.

Supp. 2d at 469-70 (quoting <u>Clark-Fitzpatrick, Inc</u>, 70 N.Y.2d at 389).

      As family members engaged in a co-owned business venture, Defendant arguably owed

Plaintiff a fiduciary duty under state law. <u>Braddock</u>, 60 A.D.3d. at 88.  However, like her other

fraud claims, Plaintiff's breach of fiduciary duty claim is duplicative of her breach of contract

claim. Plaintiff alleges that: (1) "[d]efendant did not provide shares and profits as per

agreement," and (2) "[d]efendant caused Plaintiff to lose potential income." Both allegations are

"expressly raised in [her] breach of contract claim." <u>Balta</u>, 626 F. Supp. 2d at 360. As such, I do

not recommend that Plaintiff recover damages on her breach of fiduciary duties claim.

      **F.**      **Fraudulent Conveyance**

      Plaintiff additionally raises a claim of fraudulent conveyance. <u>See</u> Compl. at ¶¶ 302–315.

To establish a constructively fraudulent conveyance, a creditor must show (1) "that the debtor

made the transfer in question without fair consideration," and (2) "the transferor is insolvent or

will be rendered insolvent by the transfer in question" (N.Y. Debtor & Creditor Law (DCL) §

273) or "the transferor is engaged in or is about to engage in a business transaction for which its

remaining property constitutes unreasonably small capital" (DCL § 274). <u>In re Sharp Int'l Corp.</u>,

403 F.3d 43, 53 (2d Cir. 2005). The operative statute at the time of the transactions at issue has

since been repealed: in December 2019, the New York State Legislature repealed the original

Article 10 of New York's Debtor and Creditor Law (which included DCL §§ 270–281) and

implemented the Uniform Voidable Transactions Act as the new Article 10, which took effect on

April 4, 2020. <u>See</u> 2019 N.Y. Sess. Laws Ch. 580 (A. 5622) (McKinney's). However, the pre-

amendment version of Article 10 is operative here "because the new law does 'not apply to a

transfer made or obligation incurred before [the act's] effective date, [April 4, 2020], nor shall it

apply to a right of action that has accrued before such effective date.'" <u>Ray v. Ray</u>, No. 20-cv-06720 (PAE), 2021 WL 1164655, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting 2019 N.Y. Sess. Laws Ch. 580).

Fair consideration is defined as "the payment of a fair equivalent value for the property interest conveyed" in "good faith." <u>Chen v. New Trend Apparel, Inc.</u>, 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014) (citing DCL § 272). As relevant here, courts assess fair equivalent value by comparing "the rough values of what was given and what was received in exchange" and "neither 'mathematical precision' nor a 'penny-for-penny exchange' is required.'" <u>Id.</u> at 448–49. An individual is deemed to be 'insolvent' when the 'present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.'" <u>Gasser v. Infanti Int'l, Inc.</u>, 353 F. Supp. 2d 342, 354 (E.D.N.Y. 2005) (quoting DCL § 271).

Plaintiff has not pleaded sufficient facts to constitute a legitimate cause of action for fraudulent conveyance. <u>In re Indus. Diamonds Antitrust Litig.</u>, 119 F. Supp. 2d at 420. Plaintiff's Proposed Findings of Fact and Conclusions of Law allege only that Defendant "purposely diluted shares in October 2014 and shrunk his shares to 6%," and that the company was "undervalued" when sold. ECF No. 274 at ¶¶ 97–100 (Pl's FFCL). Plaintiff does not allege that Defendant was rendered insolvent by the transfer of the shares or that his remaining property constituted unreasonably small capital. Nor has she pleaded adequate facts to support her contention that the company sale price of $796,720 TTD was not fair consideration.

Because Plaintiff has not stated a claim for fraudulent conveyance, I do not recommend that she be awarded damages on this claim.

**G.     Intentional Infliction of Emotional Distress**

Lastly, Plaintiff seeks damages under a claim of intentional infliction of emotional distress. <u>See</u> Compl. at ¶¶ 302–315. Under New York law, there are four elements for an IIED claim: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." <u>Pateman v. City of White Plains</u>, No. 17-cv-06156 (KMK), 2020 WL 1497054, at *25 (S.D.N.Y. Mar. 25, 2020) (quoting <u>Howell v. N.Y. Post Co.</u>, 81 N.Y.2d 115, 122 (1993)). A plaintiff "must demonstrate with particularity that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Doe v. Doe</u>, No. 16-cv-0332 (NSR), 2017 WL 3025885, at *4 (S.D.N.Y. July 14, 2017) (quoting <u>Murphy v. Am. Home Prods. Corp.</u>, 58 N.Y.2d 293, 303 (1983)). Where the defendant's conduct is part of a "continuous pattern of malicious behavior" or "will leave a lasting harm upon its victim" New York courts have found the conduct to be extreme and outrageous. <u>Doe</u>, 2017 WL 3025885, *5 (citing <u>Halio v. Lurie</u>, 15 A.D.2d 62, 66 (2d Dep't 1961)). However, a breach of contract, even an intentional one, "is not 'extreme and outrageous' conduct." <u>Seifts v. Consumer Health Sol. LLC</u>, 61 F. Supp. 3d 306, 324 (S.D.N.Y. 2014).

Plaintiff has not pleaded a cause of action for intentional infliction of emotional distress and so is not entitled to damages on this claim. <u>Id</u>. The Court recognizes that Defendant's breach of contract and the ensuing litigation has caused Plaintiff great stress and led to a breakdown in her family relationships. However, under New York law, a breach of contract does not rise to the level of the "extreme and outrageous" conduct required, and Plaintiff does not present factual allegations detailing Defendant's intent to cause severe emotional distress. <u>Grice v. McMurdy</u>, 498 F. Supp. 3d 400, 414 (W.D.N.Y. 2020).

I therefore recommend that Plaintiff not be awarded damages under her claim of intentional infliction of emotional distress.

## IV.    Attorney's Fees and Costs

Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorney's fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Diamond D Enter. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987) (cleaned up)). Plaintiff at no point has alleged that the agreement between her and Defendant contemplated attorney's fees or court costs. Accordingly, I recommend the Court decline to award Plaintiff attorney's fees and costs beyond the attorney's fees and costs the Court previously ordered Defendant to pay. See Ramgoolie, 333 F.R.D. at 31 (ordering Defendant to pay Plaintiff's attorney's fees and costs associated with her motion for sanctions and November 26, 2018 motion to compel).

## V.    Prejudgment Interest

Statutory pre-judgment interest stems from N.Y. CPLR § 5001(a) and (b), which provide that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and "shall be computed from the earliest ascertainable date the cause of action existed." The statutory interest rate in New York is nine percent. N.Y. CPLR § 5004.

Plaintiff is entitled to prejudgment interest on her breach of contract damages, or $398,380 TTD, to be calculated at the nine percent yearly interest rate from January 15, 2016, until the entry of judgment.

**CONCLUSION**

I recommend that the Court award Plaintiff $398,380 TTD in damages. I recommend that the Court decline to award damages on any other legal theory and decline to award attorney's fees and costs beyond what this Court has already ordered. Finally, I recommend Plaintiff be awarded pre-judgment interest to be calculated at a rate of nine percent of $398,380 TTD, accruing from January 15, 2016.

SARAH NETBURN
United States Magistrate Judge

DATED:          November 24, 2021
                New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie Caproni at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni. The failure to file these timely objections will

result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).